**FOUR STAR FABRICATORS, INC.,**
Appellant–Defendant,

v.

**Phillip E. BARRETT, Appellee–Plaintiff.**

No. 93A02–9402–EX–54.

Court of Appeals of Indiana,
First District.

July 28, 1994.

Jeffrey B. Kolb, Emison Doolittle Kolb & Roellgen, Vincennes, for appellant.

Matt Parmenter, Sturm, Smith & Parmenter, Vincennes, for appellee.

## STATEMENT OF THE CASE

NAJAM, Judge.

We are asked to decide whether, in light of recent developments in Indiana worker's compensation law concerning cumulative trauma injuries, an injury is compensable where a degenerative physical condition develops in the workplace and later manifests itself as a debilitating injury following an episode outside the workplace. Four Star Fabricators, Inc. appeals from a decision of the Worker's Compensation Board in favor its employee, Phillip E. Barrett, who sought benefits for an injury to his back. Four Star raises three issues for our review which we restate as follows:

1. Whether there was sufficient evidence to support the Board's determination

that Barrett's injury was causally connected to his employment at Four Star.

2. Whether the Board erred in its admission of a statement made by one of Barrett's physicians.

We affirm.

## FACTS

Barrett was employed at Four Star from 1984 until 1992 as a burning machine operator. Barrett's position required that he maneuver and lift 100 to 200 pound steel plates from which he cut different items of heavy steel. In order to cut steel plates, Barrett had the aid of several lifting devices, including "pry bars" to maneuver steel plates on his burning table, "duck feet" which utilized hooks to lift the various, finished items onto a pallet on the floor next to his table, and magnetic "cranes" also used to lift steel items. It was often necessary that Barrett manually lift or move some steel pieces because the lifting devices were ineffective with those items.

In 1988, Barrett was injured when, while lifting a 1¼ inch piece of steel plate with duck feet, he lost control of the plate and the duck feet "swung around in a circle," striking him in the back. Barrett sought medical treatment for his pain from the injury and missed three days of work. Thereafter, Four Star obtained a contract with Alcoa in late 1991 or early 1992 which required a substantial increase in Four Star's output of fabricated steel products. Barrett's workload likewise increased in the wake of the Alcoa contract, which included an increase in his lifting and bending. Barrett once again began experiencing back pain while performing his work.

On April 27, 1992, Barrett was at home when he stooped to pick up his infant child and felt a sharp pain and something "pop" in his back. Barrett was diagnosed with a herniated disc and did not return to Four Star until November of 1992. Four Star subsequently laid off Barrett, and Barrett applied for and was granted worker's compensation for his back condition. We will state additional facts in our discussion where needed.

## DISCUSSION AND DECISION

### Standard of Review

 In reviewing a decision of the full Worker's Compensation Board, we are bound by the Board's findings of fact and may only consider errors in the Board's conclusions of law. *Duvall v. ICI Americas, Inc.* (1993), Ind.App., 621 N.E.2d 1122, 1124 (citing IND. CODE § 22–3–4–8(b)). "We cannot disturb the Board's factual determinations unless we conclude that the evidence is undisputed and leads inescapably to a contrary result." *Id.* In other words, in our review of the Board's factfindings we must disregard all evidence unfavorable to the decision and consider only the evidence and reasonable inferences therefrom which supports those findings. *Id.*; *Glenn v. Board of Comm'rs* (1990), Ind. App., 552 N.E.2d 485, 486–87. While we do not owe this same measure of deference to the Board's legal conclusions, its decision will not be disturbed unless the Board incorrectly interpreted the Worker's Compensation Act. *See Duvall,* 621 N.E.2d at 1124.

### Issue One: Sufficiency of Causation Evidence

The primary thrust of Four Star's appeal is that the evidence does not support the Board's determination that a causal relationship existed between Barrett's injury and his employment at Four Star. Specifically, Four Star contends there was insufficient evidence to establish that Barrett's back injury arose out of and occurred in the course of his employment with Four Star because Barrett simply "suffered an accident at home unrelated to his employment." Brief of Appellant at 16.

 The Worker's Compensation Act authorizes the payment of compensation to employees for "personal injury or death by accident arising out of and in the course of the employment." IND.CODE § 22–3–2–2(a). Thus, for an injury to be compensable under the Act, the injury must both arise "out of" the employment and arise "in the course of" the employment. Both requirements must be fulfilled before worker's compensation is awarded, and neither alone is sufficient. *See Olinger Const. Co. v. Mosbey*

(1981), Ind.App., 427 N.E.2d 910, 912; *Marshall v. Tribune–Star Publishing Co.* (1968), 142 Ind.App. 556, 561, 236 N.E.2d 508, 512, *trans. denied.* "Arising out of" refers to the origin and cause of the injury, while "in the course of" means the time, place and circumstances under which the injury took place. *Fields v. Cummins Employees Fed. Credit Union* (1989), Ind.App., 540 N.E.2d 631, 635; *Skinner v. Martin* (1983), Ind.App., 455 N.E.2d 1168, 1170.

■ Four Star places undue emphasis on the fact that Barrett's diagnosis with a herniated disc and resulting worker's compensation claim arose only after he suffered an episode of acute back pain in the home. We cannot agree that the place of this one episode of back pain determines whether Barrett's injury occurred in the course of his employment at Four Star. In *Evans v. Yankeetown Dock Corp.* (1986), Ind., 491 N.E.2d 969, our supreme court clarified the requirement of an accidental injury under the Worker's Compensation Act and held that an injury is accidental "when it is the unexpected consequence of the usual exertion or exposure of the particular employee's job." *Id.* at 974. The *Evans* decision represents a shift under the Worker's Compensation Act from an inquiry into whether an injury is the result of *an* accident as a discrete event to whether the injury is *accidental* or unexpected. *See id.*

■ In *Union City Body Co. v. Lambdin* (1991), Ind.App., 569 N.E.2d 373, this court interpreted *Evans* and noted that an injury may be compensable under the Act if it "happens day after day on the job and the combination of all the days produce [sic] the injurious result." *Id.* at 374. Accordingly, when a disabling condition is produced by repeatedly performing the same job function over several years, the claimant is not required to show the resultant injury and damage "was due to one particular blow which produced the particular injury." *Lovely v. Cooper Indus. Prod., Inc.* (1981), Ind.App., 429 N.E.2d 274, 278–79. An employee may have a compensable worker's compensation claim when his condition gradually develops from the cumulative effect of his work activi-

ties. *See Duvall v. ICI Americas, Inc.* (1993), Ind.App., 621 N.E.2d 1122, 1126.

■ Thus, our courts have recognized that the definition of an "accidental injury" under the Worker's Compensation Act includes those injuries which occur incrementally over time. In other words, the repetitive motions required by the employee's job functions may give rise to a compensable injury, even though the injury is not attributable to any discrete and identifiable date, time or event. *See Duvall,* 621 N.E.2d at 1126 (carpal tunnel syndrome resulting from repetitive, day-to-day motions required at job); *Lambdin,* 569 N.E.2d at 373–74 (employee's day after day bending, twisting, stooping and lifting while working combined to produce injurious result); *American Maize Prod. Co. v. Nichiporchik* (1940), 108 Ind.App. 502, 511, 29 N.E.2d 801, 805 (traumatic concussions delivered to employee's hands by air hammer over long period of time produced Dupuytren's contraction).

■ In determining whether an employee's "cumulative trauma" injury arose "in the course of" employment, the focus is not merely on the place where the injury manifested itself. *Cf. Holland–St. Louis Sugar Co. v. Shraluka* (1917), 64 Ind.App. 545, 550, 116 N.E. 330, 331 (accident or injury may arise out of or in the course of employment even when employee is not actually working at time of accident or injury). Rather, where the evidence demonstrates that a cumulative trauma injury developed during the performance of the employee's job functions, the injury occurs "in the course of" employment, whether it first manifests itself in or out of the workplace. This conclusion is consistent with both our supreme court's interpretation of the accidental injury requirement in *Evans* and the humane purpose of the Worker's Compensation Act which requires a broad and liberal construction of the phrase "in the course of employment." *See Goldstone v. Kozma* (1971), 149 Ind.App. 626, 631–32, 274 N.E.2d 304, 307.

■ The particular facts and circumstances of each case determine whether an injury arose out of and in the course of employment. *Stanley v. Riggs Equipment*

Co. (1961), 133 Ind.App. 86, 90, 178 N.E.2d 766, 768. Here, the evidence shows that Barrett's employment at Four Star required that he maneuver and lift steel items weighing approximately 100 to 200 pounds with the aid of lifting devices. Barrett's job also involved repetitive bending at the waist. Barrett first injured his back in 1988 while working for Four Star. Barrett was absent from work for three days as a result of that episode. Barrett testified that the pain in his back resumed in 1992 when his workload increased. According to Barrett, his back pain was constant until he experienced the episode of acute back pain in his home in April of 1992.

Physicians who examined Barrett corroborated Barrett's claims and the Board's findings. Doctors Fenol, Kuric and Norris all diagnosed Barrett with a degenerative disc disease or a herniated disc. All three opined that Barrett's 1988 back injury and his repetitive lifting and bending while employed at Four Star either "contributed" to his herniated disc or that the disc injury was "related" to his work activities. Specifically, Dr. Fenol concluded that Barrett's repetitive lifting produced physiological changes in his back. Dr. Fenol characterized the incident in Barrett's home when Barrett felt his back pop as "the straw that broke the camel's back." Record at 116.

Further, Dr. Kuric conceded that frequent lifting of items weighing approximately 100 to 200 pounds could be a contributing factor in Barrett's degenerative arthritis of the lower back. Record at 188 and 193. Dr. Kuric agreed that changes in the spine will develop from such heavy lifting over a period of time. According to Dr. Kuric, repetitive traumas or injuries are factors that hasten or contribute to degenerative arthritis. Dr. Norris similarly concluded that Barrett's degenerative disc disease was related in part to his repetitive lifting activities at Four Star.

Accordingly, the evidence demonstrated that Barrett's herniated disc injury was produced at least in part by the cumulative effect that his work functions had on his back, despite the fact that the injury first manifested itself outside the workplace. Thus, Barrett's injury, arising from the cumulative effect of workplace trauma to his back, was an injury which arose out of and in the course of his employment at Four Star just as though the trauma had occurred as a discrete event in the workplace. See Duvall, 621 N.E.2d at 1126. This is not a case where an injury occurred outside the workplace and there is no evidence that the employee's work requirements produced the injurious outcome. See Lovely v. Cooper Indus. Prod., Inc. (1981), Ind.App., 429 N.E.2d 274, 279 (no causal connection between back injury and employment where employee's degenerative disc injury was result of "normal wear and tear" or natural progression of age, and examining physician could not conclude with reasonable medical certainty that heavy lifting on job caused injury). Under those circumstances, such an injury does not arise in the course of employment. Here, however, the medical evidence established that Barrett's herniated disc was the result of a degenerative condition produced in part by his bending and lifting at Four Star. There is no conflicting medical evidence that Barrett's ordinary act of bending to pick up his child was the sole cause of his herniated disk condition. Barrett's incident at home was merely one bending motion which followed countless, damaging others in the workplace.

We conclude that the evidence was sufficient to establish that Barrett's injury both "arose out of" and occurred "in the course of" his employment with Four Star. Whether the requisite causal relationship exists between the injury and the employment is a question of fact for the Board and, based on the evidence, the Board properly concluded that Barrett met his burden of proof on that issue. See Donahue v. Youngstown Sheet & Tube Co. (1985), Ind., 474 N.E.2d 1013, 1014. There is no merit to Four Star's contention that Doctor Fenol's expert opinion was insufficient to establish causation because he failed to state his opinion in terms of "reasonable medical certainty." All three physicians who examined Barrett concluded that his degenerative back condition was caused in part by his lifting and bending at Four Star.

Thus, even though Dr. Fenol stated his opinion in terms of "probability,"

his opinion was stated with sufficient certainty to establish causation.[1] A worker's compensation claimant is not required to negate all other causes for his injury. *Estey Piano Corp. v. Steffen* (1975), 164 Ind.App. 239, 243, 328 N.E.2d 240, 243. The employee's burden of showing the requisite causal connection may be established by the type of accident considered with the nature of the employment. *See Odd Fellows Cemetery v. Daniels* (1941), 109 Ind.App. 127, 131, 33 N.E.2d 357, 358. Further, expert opinions stated in terms of either "reasonable scientific or medical certainty" or "probability" may support a judgment. *See Noblesville Casting Div. of TRW v. Prince* (1982), Ind., 438 N.E.2d 722, 731. An expert opinion which lacks reasonable certainty or probability but instead is stated as something is "possible" or "could have been" is insufficient evidence by itself to support a judgment. *See id.* This rule is a counterpart to the civil burden of proof, and an opinion stated as a probability satisfies the rule. *See id.; Black's Law Dictionary* 1344 (4th ed. rev. 1968) (preponderance defined as "that which best accords with reason and probability").

Four Star's quarrel with the sufficiency of Dr. Fenol's opinion, and indeed with all of the Board's findings, is simply a request that we reweigh the evidence heard by the single hearing member. This we may not do. *See K-Mart Corp. v. Morrison* (1993), Ind.App., 609 N.E.2d 17, 28, *trans. denied.* To prevail, Four Star must demonstrate that the evidence leads inalterably to a conclusion contrary to that reached by the Board. *See id.* Here, the evidence does not, and we find no error in the Board's findings.

### Issue Two: Admission of Dr. Norris' Written Opinion

Four Star also asserts that the single hearing member, over its objection, erroneously admitted a medical report of Randall G. Norris, M.D. who examined Barrett. Four Star claims that unless Barrett or Dr. Norris furnished the report to Four Star at least 30 days before the hearing, the statement is inadmissible. *See* IND.CODE § 22–3–3–6(d). According to Four Star, in order to satisfy this foundational requirement, there must be some indication in the record that Barrett complied with the statute and furnished the statement to Four Star. We do not agree.

Four Star is correct that either Barrett or Dr. Norris was required to furnish the report to Four Star 30 days before the hearing. However, we agree with Barrett that Four Star's objection at the hearing for lack of foundation was too general and was ineffective to preserve error for appellate review of the hearing member's ruling. To preserve error in the admission of evidence over an objection based on inadequate foundation, the complaining party may not state the objection in general terms but must state the objection with specificity. *See Coleman v. State* (1984), Ind., 465 N.E.2d 1130, 1135. Failure to specify the reasons why the evidentiary foundation was inadequate results in waiver of the issue on appeal. *Id.* Here, Four Star did not explain to the single hearing member that its objection for lack of foundation was based on Barrett's failure to comply with Indiana Code § 22–3–3–6(d).

Nor, as Four Star contends, can we discern from the record that the single hearing member actually understood Barrett was objecting on the basis of this statute. *See Jethroe v. State* (1975), 262 Ind. 505, 511, 319 N.E.2d 133, 137–38 (exception to requirement of specific objection at trial exists when it is clear that trial judge understood and considered the unspecified ground in making ruling). There is no discussion on the record concerning whether Barrett furnished Dr. Norris' report to Four Star pursuant to Indiana Code § 22–3–3–6(d). Further, Four Star maintains in its Reply Brief that it objected to admission of this report prior to the hearing when it refused to stipulate to its admission on the basis of the statute. Four Star reasons that the single hearing member was "already advised" of Four Star's objection when she overruled Four Star's objection at trial.

We once again observe, and Four Star actually concedes, that its refusal to stipulate to Dr. Norris' report occurred prior to trial,

---

1. We are not persuaded that Dr. Fenol's use of the phrase "I would like to think" when rendering his opinion substantially affects the certainty of his opinion that Barrett's lifting and bending contributed to his back injury. That phraseology is merely a manner of speaking which must be considered in the context of his entire testimony.

was not heard by the single hearing member and is not in the record. *See* Reply Brief at 5. Thus, the hearing member cannot be deemed aware of Four Star's objection to the admission of Dr. Norris' report. We conclude that Four Star has waived review of this issue.

Even if we were to conclude that Four Star properly preserved this issue for review, reversal of the Board's decision is not required. When incompetent evidence is admitted in a worker's compensation hearing, we will not disturb the Board's award if it is sustained by competent evidence. *See Holliday v. National Malleable & Steel Casting Co.* (1932), 95 Ind.App. 303, 304–05, 183 N.E. 407, 407–08 (no reversal required based on Board's admission of report not properly served on party because sufficient, other evidence supported Board's award). Dr. Norris' report was cumulative of the opinions of Doctors Fenol and Kuric who both concluded that Barrett's injury was caused in part by his work activities at Four Star. Four Star has shown no reversible error in the admission of Dr. Norris' report.

The decision of the Worker's Compensation Board is affirmed.

ROBERTSON and KIRSCH, JJ., concur.