**Ella OUTLAW, Appellant–Plaintiff,**

v.

**ERBRICH PRODUCTS COMPANY, INC., Appellee–Defendant.**

No. 93A02–0006–EX–358.

Court of Appeals of Indiana.

Jan. 19, 2001.

Marcia J. Cossell, Lee, Burns & Cossell, LLP, Indianapolis, Indiana, Attorney For Appellant.

Bruce J. Alvarado, Orfanos & Alvarado, LLC, Indianapolis, Indiana, Attorney For Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Ella Outlaw filed an application for adjustment of claim with the Worker's Compensation Board of Indiana (the "Board") against her employer, Erbrich Products Company, Inc. ("Erbrich"). A Single Hearing Judge denied her claim, and Outlaw petitioned the full Board, which affirmed the Single Hearing Judge's decision. On appeal, Outlaw presents two issues which we restate as whether the Board's findings are supported by the evidence and whether the findings are stated with sufficient specificity.

We reverse and remand with instructions.

### FACTS AND PROCEDURAL HISTORY

■ Outlaw began full-time employment with Erbrich in 1981.[1] Her job entailed working on different assembly lines to prepare products such as toilet bowl cleaner, bleach, ammonia, vinegar, fabric softener, lime remover, and mustard. Outlaw was exposed to frequent chemical spills at the plant, including a major chemical spill that forced an evacuation of the plant and the surrounding neighborhood.

Outlaw began having severe respiratory problems in 1991 and sought medical treatment at Wishard Hospital. On January 8, 1992, Dr. Todd Ryan prepared a letter indicating that Outlaw was suffering from respiratory problems due to her exposure to "chemicals ... on her job[,]" and Outlaw submitted that letter to Erbrich's plant manager. Record at 236. Dr. Ryan encouraged Outlaw to quit her job, but she advised him that she could not stop working at Erbrich because it was her sole source of income. Nevertheless, she eventually quit sometime during 1992.

In January 1993, Outlaw was referred to Dr. Joe G.N. Garcia, Director of the Indiana Occupational Lung Disease Center at Indiana University Medical Center, who diagnosed her with occupational asthma, or bronchiolitis.[2] Dr. Garcia learned that Outlaw had been exposed to a myriad of chemicals at Erbrich, including ammonia, hydrochloric acid, sodium hypochlorite, acetic acid, and formaldehyde, and he concluded that her exposure to such chemical agents at work was the primary cause of

---

1. Erbrich states that Outlaw began working full-time at the plant in 1986, citing a report that is not included in the record before us. We can consider only those matters which are contained in the record of proceedings submitted to this court. *Dellenbach v. State*, 508 N.E.2d 1309, 1316 (Ind.Ct.App.1987). Erbrich could have moved to supplement the record with documents it complains Outlaw omitted. *See* Ind. Appellate Rule 7.2(C).

2. Occupational asthma generally refers to asthma that results from "prolonged exposure to ... low levels of [a chemical agent in the workplace,]" and bronchiolitis is characterized as mild dysfunction of the large airways in the lungs and significant dysfunction of the small airways. *See* Record at 124, 150.

her lung disease. Dr. Garcia advised Outlaw against returning to work at Erbrich.

Outlaw filed her application for adjustment of claim with the Board, and the parties entered a stipulation of facts, issues and evidence. A hearing was held before a Single Hearing Judge, who adopted the parties' stipulation as the Board's findings and entered the following additional findings:

1. It is further found that based on the deposition of Dr. Garcia, Dr. Garcia was provided with an erroneous history by the plaintiff as the doctor indicates that the plaintiff was continuously exposed to chemicals involving ammonia, hydrochloric acid, sodium hypochlorite, acetic acid, formaldehyde, and fabric softener.

2. It is further found that such history is not true and that so called batches of toilet bowl cleaner did not include all of such chemicals and, in fact, if they did the mere combining of such chemicals would cause immediate adverse chemical reaction.

3. It is further found, therefore, that Dr. Garcia's conclusions are of less probative value based on the erroneous history provided to him.

4. It is further found that the toilet bowl cleaner in question contained a less than 10% concentration of hydrochloric acid and that the other ingredients were basically detergents and perfume.

5. It is further found that at concentrations lower than 20% the vapor pressure of hydrochloric acid is so low that virtually none of the acid would exist in vapor form.

6. It is further found that the doctors describe plaintiff's disease in terms of her lower respiratory tract and that if hydrochloric acid were a causative agent one would expect that there would be demonstrable damage to plaintiff's upper respiratory tract, which the undersigned finds that there is no such damage evident.

7. It is further found that the plaintiff is a long-time cigarette smoker and that she has given different statements regarding the cessation of her smoking, the credibility of which must be questioned.

8. It is further found that based upon the evidence herein, the plaintiff has failed to demonstrate that she suffered from respiratory problems arising out of and in the course of her employment with the defendant herein.

Record at 7–8. Outlaw timely filed her application for a review by the full Board, which was granted. On May 15, 2000, the Board affirmed the Single Hearing Judge's decision that Outlaw should take nothing by her application for adjustment of claim. Outlaw appeals the Board's decision.[3]

## DISCUSSION AND DECISION

■ It is the duty of the Board, as trier of fact, to make findings that reveal its analysis of the evidence and are specific enough to permit intelligent review of the Board's decision. *Neidige v. Cracker Barrel*, 719 N.E.2d 441, 443 (Ind.Ct.App.1999). On appeal, we employ a two-tiered standard of review. *Id.* We will review the evidence in the record to see if there is any competent evidence of probative value to support the Board's findings and then examine the findings to see if they are sufficient to support the decision. *Id.* We will not reweigh the evidence or assess the credibility of witnesses. *Id.* We will consider only the evidence most favorable to the award, including any and all reasonable inferences deductible from the proven facts. *Id.*

■ Outlaw contends that the Board erred when it determined that her illness did not arise out of her employment with Erbrich. To recover under the Worker's Compensation Act, a claimant must establish that an injury or death occurred "by accident arising out of and in the course of employment." *See* IND.CODE § 22–3–2–2.

3. We heard oral argument on November 27, 2000.

An injury "arises out of" employment when a causal nexus exists between the injury sustained and the duties or services performed by the injured employee. *Indiana Michigan Power Co. v. Roush,* 706 N.E.2d 1110, 1113 (Ind.Ct.App.1999). An accident occurs "in the course of employment" when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is fulfilling the duties of employment or while engaged in doing something incidental thereto. *Tanglewood Trace v. Long,* 715 N.E.2d 410, 413 (Ind. Ct.App.1999).

■ Outlaw's treating physician, Dr. Garcia, testified that Outlaw's occupational asthma was caused by her exposure to chemicals while employed at the Erbrich plant. Dr. William Waddell, however, a toxicologist who testified on Erbrich's behalf, stated that Outlaw's cigarette smoking was the sole cause of her asthma. As factfinder, the Board was free to accept or reject either expert's opinion testimony. *See Hill v. Worldmark Corp./Mid America Extrusions Corp.,* 651 N.E.2d 785, 787 (Ind.1995) (citation omitted). Thus, the Board was entitled to give more weight to Dr. Waddell's testimony in ruling on Outlaw's application for adjustment of claim. Some of the Board's findings, however, are not supported by the evidence and, therefore, do not support its conclusion that Dr. Garcia's testimony was less probative than Dr. Waddell's. Moreover, the Board made no findings with regard to the expert testimony of Dr. D. Duane Houser, who also testified that Outlaw's occupational asthma was caused by her chemical exposure at Erbrich.

The Board found that Outlaw gave Dr. Garcia an "erroneous history" in that he believed she was "continuously[4] exposed to chemicals involving ammonia, hydrochloric acid, sodium hypochlorite, acetic acid, formaldehyde, and fabric softener." Record at 7. The record does not support the Board's finding that this was an "erroneous history" of Outlaw's exposure at work. To the contrary, the undisputed evidence indicates that Erbrich manufactured several different products including bleach, ammonia, toilet bowl cleaner, vinegar, fabric softener, lime remover, and mustard, and that Outlaw "work[ed] on all the lines" over the course of more than a decade as a full-time Erbrich employee. Record at 368. We conclude that the record does not support the Board's determination that Dr. Garcia was provided with an erroneous history concerning the extent of Outlaw's exposure to the listed chemicals.

While the record supports the Board's finding number 2, in that the components of the toilet bowl cleaner could not have included ammonia, hydrochloric acid, sodium hypochlorite, acetic acid, formaldehyde, and fabric softener, this finding does not support the Board's denial of Outlaw's application for adjustment of claim. This finding has no impact on the probative value of Dr. Garcia's opinion that Outlaw's exposure to various "harmful agents" at work was the primary cause of her occupational asthma. Record at 132. Dr. Garcia testified that Outlaw was exposed to the toilet bowl cleaner, "as well as other components in the [Erbrich] plant." Record at 130. The evidence is undisputed that, as an Erbrich employee, Outlaw was exposed to various chemicals in the manufacture of products other than the toilet bowl cleaner. It is, therefore, insignificant that those chemicals were not combined in any given product. For these reasons, we conclude the Board's determination that Dr. Garcia's testimony was entitled to less probative value is not supported by the record.

■ Outlaw also contends that the Board's findings are not sufficiently specific to support its decision. Specific findings of basic fact must reveal the Board's determination of the various relevant sub-issues

---

4. "Continuous" is defined as "Uninterrupted in time, sequence, substance, or extent." *See*

The American Heritage Dictionary (3d ed.1992) 408.

and factual disputes which, in their sum, are dispositive of the particular claim or ultimate factual question before the Board. *Perez v. U.S. Steel Corp.*, 426 N.E.2d 29, 33 (Ind.1981). The findings must be specific enough to provide the reader with an understanding of the Board's reasons, based on the evidence, for its finding of ultimate fact. *Id.* The more complex or technical the sub-issues or factual disputes are in any claim, the greater the particularity which is needed to satisfy the various purposes of the requirement. *Id.* Here, the factual dispute involves complex medical sub-issues which require that the Board issue particularly detailed findings. We agree with Outlaw that the Board's findings are not sufficiently specific to support the denial of her application for adjustment of claim.

■ For instance, the Board's findings numbered 4, 5 and 6 relate solely to Outlaw's exposure to the toilet bowl cleaner, which was primarily composed of hydrochloric acid, but the Board made no findings with respect to her exposure to the myriad of chemicals used to manufacture other products at Erbrich. The evidence is undisputed that Outlaw was exposed to ammonia, sodium hypochlorite, acetic acid, and formaldehyde when she worked on the various product lines. Thus, the extent of her exposure to the toilet bowl cleaner is not dispositive of whether her occupational asthma arose out of her employment with Erbrich. Accordingly, on remand, the Board should review the evidence relevant to Outlaw's exposure to chemicals other than those used to make the toilet bowl cleaner and make specific findings thereon.

■ While the Board's finding number 7 is supported by the evidence, it does not support the Board's ultimate denial of Outlaw's claim. The evidence is undisputed that Outlaw smoked cigarettes for several years, but the Board made no finding as to the significance of her smoking history.

While Erbrich's expert witness, Dr. Waddell, testified that smoking was the sole cause of Outlaw's asthma, he also admitted that Outlaw's respiratory problems might have been caused by an allergy or specific sensitivity to one of the components of the toilet bowl cleaner.[5] Record at 65–66. And while Dr. Garcia acknowledged that Outlaw had smoked for approximately twenty years, he testified that her smoking was *not* the cause of her occupational asthma. Record at 132.

Erbrich admits that Outlaw's smoking history would not preclude compensation for an occupational injury caused by inhalation of chemicals at the plant. Erbrich insists, however, that the Board properly concluded that Dr. Garcia's testimony was not credible since it was based in part on Outlaw's inconsistent statements regarding her smoking history. In fact, in stating his opinion that Outlaw's lung disease was the result of chemical inhalation and *not* the result of cigarette smoking, Dr. Garcia testified that her "cigarette smoking exposure . . . is difficult to quantify[.]" Record at 132. In other words, Dr. Garcia was able to diagnose Outlaw's occupational asthma and form an opinion on causation notwithstanding her smoking history. Moreover, Dr. Garcia stated that her presentation was consistent with someone who had suffered a chemical inhalation injury rather than someone with a smoking-related illness. Record at 132. Dr. Houser agreed, and he testified that even if Outlaw smoked two packs of cigarettes a day for twenty years, he would not expect to see such a high level of reactivity in her airways. Record at 314.

■ We remind the Board that if it determines that Outlaw's smoking *contributed* to her lung disease or made her more susceptible to injury as a result of exposure to the chemicals at Erbrich, such a finding would not, in itself, require that

---

**5.** Dr. Waddell admitted that he had "no idea" what all of the components of the toilet bowl cleaner were. Record at 65.

Outlaw's application for adjustment of claim be denied. When a claimant's physical condition combines with an accident at work to produce a single injury, the Board may find that the injury arose out of that claimant's employment within the meaning of the Worker's Compensation Act. *Four Star Fabricators, Inc. v. Barrett,* 638 N.E.2d 792, 796 (Ind.Ct.App.1994). Moreover, as this court held in *Bethlehem Steel Corp. v. Cummings,* 160 Ind.App. 160, 162, 310 N.E.2d 565, 567 (1974), where a claimant merely has a physical condition which renders him more susceptible to being injured, he is entitled to recover for the full extent of the injury received.

For all of the above stated reasons, we reverse the Board's denial of Outlaw's application for adjustment of claim and remand for redetermination in accordance with this opinion.

Reversed and remanded with instructions.

SHARPNACK, C.J., and SULLIVAN, J., concur.