**Ella M. OUTLAW, Appellant–Plaintiff,**

v.

**ERBRICH PRODUCTS COMPANY, INC., Appellee–Defendant.**

No. 93A02–0106–EX–399.

Court of Appeals of Indiana.

Nov. 14, 2001.

Marcia J. Cossell, Lee, Burns & Cossell, LLP, Indianapolis, IN, Attorney for Appellant.

Bruce J. Alvarado, Ofranos & Alvarado, Indianapolis, IN, Attorney for Appellee.

---

## OPINION

VAIDIK, Judge.

### Case Summary

Ella M. Outlaw appeals the decision by the Worker's Compensation Board of Indiana (Board) ruling that Outlaw should take nothing on her application. Specifically, Outlaw alleges that the Board did not issue specific findings of fact consistent with an earlier opinion by this court. Because the findings of fact issued by the Board were not sufficiently specific to support its decision on Outlaw's claim, we reverse and remand with instructions for the Board to make additional findings.

### Facts and Procedural History

This is the second time that this cause has been appealed. Outlaw began working for Erbrich Products Company (Erbrich) in the early 1980s. Outlaw primarily worked on the factory's production line for toilet bowl cleaner. On occasion, however, Outlaw also worked on the mustard, vinegar, bleach, fabric softener, and ammonia lines. Record at 372–73.[1] During her employment at Erbrich, Outlaw was exposed to a variety of chemicals including ammonia, hydrochloric acid, sodium hypochlorate, acetic acid, and formaldehyde as well as asthmagine that was contained in the glue on the back of the labels affixed to the products. Record at 130, 142. In addition, Outlaw was exposed to numerous chemical spills on the toilet bowl line and a large spill on the bleach line that resulted in the evacuation of the factory and the surrounding neighborhood. Record at 371–72.

Prior to and during her employment with Erbrich, Outlaw was a daily smoker and suffered from several bouts of bronchitis. Record at 149, 346–47. In 1991, Outlaw began experiencing severe respiratory problems, and she sought treatment at Wishard Hospital. Outlaw's treating physician advised her to quit her job, and Outlaw ultimately did leave her job. Eventually in 1993, Outlaw was referred for medical treatment to Dr. Joe G.N. Garcia, director of the Indiana University Occupational Lung Center. Record at 121, 169. Dr. Garcia concluded that Outlaw suffered from occupational asthma brought on primarily by her exposure to chemicals found in the Erbrich factory. Record at 133–34, 142, 150.

Outlaw filed an application of adjustment of claim with the Board. A single hearing officer heard Outlaw's case. On July 28, 1999, the hearing officer issued an order rejecting Outlaw's claim, which included the following findings:

1. It is further found that based on the deposition of Dr. Garcia, Dr. Garcia was provided with an erroneous history by the plaintiff as the doctor indicates that the plaintiff was continuously exposed to chemicals involving ammonia, hydrochloric acid, sodium hypochlorite, acetic acid, formaldehyde, and fabric softener.

2. It is further found that such history is not true and that so called batches of toilet bowl cleaner did not include all of such chemicals and, in fact, if they did the mere combining of such chemicals would cause immediate adverse chemical reaction.

3. It is further found, therefore, that Dr. Garcia's conclusions are of less probative value based on the erroneous history provided to him.

4. It is further found that the toilet bowl cleaner in question contained a less than 10% concentration of hydrochloric acid and that the other ingredients were basically detergents and perfume.

---

1. Record refers to the record citation for this information from the previous appeal.

5. It is further found that at concentrations lower than 20% the vapor pressure of hydrochloric acid is so low that virtually none of the acid would exist in vapor form.

6. It is further found that the doctors describe plaintiff's disease in terms of her lower respiratory tract and that if hydrochloric acid were a causative agent one would expect that there would be demonstrable damage to plaintiff's upper respiratory tract, which the undersigned finds that there is no such damage evident.

7. It is further found that the plaintiff is a long-time cigarette smoker and that she has given different statements regarding the cessation of her smoking, the credibility of which must be questioned.

8. It is further found that based upon the evidence herein, the plaintiff has failed to demonstrate that she suffered from respiratory problems arising out of and in the course of her employment with the defendant herein.

Record at 7–8. Outlaw appealed the decision to the full Board. On May 15, 2000, the full Board affirmed the decision. Outlaw then appealed to this court, and on January 19, 2001, we issued an opinion reversing and remanding the case to the full Board with instructions for the Board to "review the evidence relevant to Outlaw's exposure to chemicals other than those used to make the toilet bowl cleaner and make specific findings thereon." *Outlaw v. Erbrich Prods. Co.*, 742 N.E.2d 526, 531 (Ind.Ct.App.2001). In addition, we found that the Board's determination involving Dr. Garcia's testimony was not supported by the record and that the

Board made no finding as to the significance of Outlaw's smoking history.[2] *Id.* at 530–31

Upon remand, the Board issued additional findings in support of its original award. In its additional findings released on June 5, 2001, the Board found:

A.) That the plaintiff worked primarily on the toilet bowl cleaner line.

B.) It is further found that the plaintiff also worked on the mustard line.

C.) It is further found that the evidence of plaintiff's work on the other lines did not include evidence of quantitative exposure to other chemicals as opposed to working on an area of the line where boxes were made or other operations.

D.) It is further found that evidence of qualitative exposure to a given chemical is not sufficient probative evidence to indicate a quantitative exposure sufficient to cause a given effect on the body.

E.) It is further found that Dr. Houser based his testimony in part on the bowl cleaner containing ammonia and other chemicals as evidenced by his testimony at deposition page 36.

F.) It is further found that the plaintiff had chronic bronchitis which pre-existed her claim herein.

G.) It is further found that plaintiff continued to smoke as evidenced by her elevated carboxyhemoglobin levels in 1993.

H.) It is further found that plaintiff's condition did not improve when she was no longer exposed to the work environment by virtue of her having left her employment.

I.) It is further found that plaintiff's pulmonary and other lab studies are

---

2. We note that in its brief Erblich devoted a substantial amount of its argument to attacking the previous opinion issued by this court. While we appreciate zealous advocacy, the issue on this appeal concerned the specificity of the additional findings of fact, it was not an opportunity to reargue the previous opinion of this court regarding Dr. Garcia's testimony.

consistent with heavy cigarette smoking as the causative factor in her present condition and the undersigned finds the same to be true.

J.) It is further found that based upon the evidence herein, the plaintiff has failed to demonstrate that she suffered from respiratory problems arising out of and in the course of her employment with the defendant herein.

Appellant's App. P.7–8. This appeal ensued.

## Discussion and Decision

■■■■ Outlaw argues that the Board did not follow our previous mandate to issue additional specific findings that clearly support its finding of ultimate fact. We agree. Findings of basic fact must reveal the Board's analysis of the evidence and its determination therefrom regarding the various specific issues of fact that bear on the particular claim. *Perez v. United States Steel Corp.*, 426 N.E.2d 29, 33 (Ind. 1981). When reviewing findings, we are mindful that findings must be tailored to the particular award, and that not all findings will necessarily be of the same character. *Starks v. Nat'l Serv–All, Inc.*, 634 N.E.2d 88, 90 (Ind.Ct.App.1994). However, the findings must be specific enough to provide the reader, whether it be the claimant, the employer, or this court, with an understanding of the Board's reasons, based on the evidence, for its finding of ultimate fact. *Perez*, 426 N.E.2d at 33. As we noted in the first appeal, this case concerns "a factual dispute [involving] complex medical sub-issues which require that the Board issue particularly detailed findings." *Outlaw*, 742 N.E.2d at 531. When issuing its additional findings, the Board failed to issue straightforward findings that explained its reasoning in deciding the medical sub-issues of this case.

In our original opinion, we listed a number of chemicals that Outlaw was exposed to and instructed the Board to make specific findings about these additional chemicals and what effect, if any, they had on Outlaw's condition. *See id.* In response to our request, the Board issued these two findings:

C.) It is further found that the evidence of plaintiff's work on the other lines did not include evidence of quantitative exposure to other chemicals as opposed to working on an area of the line where boxes were made or other operations.

D.) It is further found that evidence of qualitative exposure to a given chemical is not sufficient probative evidence to indicate a quantitative exposure sufficient to cause a given effect on the body.

Appellant's App. P.7–8. Not only is the message contained in these two findings lost through the use of awkward language, the findings do not clarify what chemicals Outlaw was actually exposed to, whether Outlaw might have had a greater degree of susceptibility to those chemicals, and why the amount of the given exposures would not have an effect on Outlaw's medical condition.

■■■ The purpose of the Board issuing findings of fact is to create a road map so that the readers of the opinion—including this court—can clearly follow the reasoning used by the Board to reach its ultimate conclusion. When the findings of fact are straightforward and detailed, the Board's position is bolstered; however, when the Board's findings are vague and incomplete, it results in guesswork on the part of the readers of the decision.

If the Board finds that chemical exposure is inconsistent with Outlaw's condition, it should clearly state that finding and present the facts that support that determination. We note, that the Board was able to clarify the significance of Outlaw's

smoking history on her current medical condition. On remand, the Board should make similar straightforward findings concerning the relevant issues of fact such as the chemicals Outlaw was actually exposed to, Outlaw's degree of susceptibility to those chemicals, and the possibility that the cumulative effect of exposure to the chemicals in the factory could create occupational asthma. Thus, we reverse the Board's decision and remand with instructions to enter specific findings of fact in accordance with this opinion.

Reversed and remanded with instructions.

DARDEN, J., and MATHIAS, J., concur.