**PS2, LLC, d/b/a Boston's Gourmet Pizza, Appellant–Defendant,**

v.

**Adam CHILDERS, Appellee–Plaintiff.**

No. 93A02–0902–EX–176.

Court of Appeals of Indiana.

Aug. 6, 2009.

Rehearing Denied Oct. 13, 2009.

---

Kevin W. Kearney, Hunt Suedhoff Kala-maros, LLP, South Bend, IN, Attorney for Appellant.

Rick C. Gikas, Merrillville, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

PS2 LLC d/b/a Boston's Gourmet Pizza ("Boston") appeals the order of the Worker's Compensation Board ("the Board") holding that Adam Childers was entitled to receive a certain secondary medical treatment and the continued payment of temporary total disability benefits.

We affirm.

### ISSUES [1]

1. Whether the Board erred when it held that Childers was "entitled to receive secondary medical treatment, including surgery, for weight reduction as a precursor to his primary entitlement to back surgery to directly repair the result of his work-related accident." (Boston's App. 121).

2. Whether the Board erred when it held that Childers was entitled to receive temporary total disability benefits "while preparing for, undergoing and recovering from both his secondary and primary surgeries to treat his work-related injury, until such time as [his] injury shall become quiescent and be determined to be in a state of maximum medical improvement." *Id.*

### FACTS

According to the stipulated facts, on March 28, 2007, Childers was employed as a cook at Boston when he was accidentally struck in the back by a freezer door-sustaining an injury to his lower back. Childers immediately reported the accident to Boston and was sent for medical treat-

---

1. Boston enumerates the following two issues. However, it then presents seven arguments. It appears to us that its first six arguments address the first issue, and the last argument addresses the second issue; we have structured this opinion accordingly.

ment. At the time of the accident, Childers was twenty-five years old, six feet tall and weighed approximately 340 pounds; and he smoked approximately 30 cigarettes a day.

Stipulated exhibits reflected and noted his medical treatments after the accident. An April 20, 2007, MRI of his lumbar spine evidenced degeneration of the disc with central disc herniation at the L5–S1 level. Thereafter, on April 23, 2007, his treating physician, Dr. Singh, noted Childers' pain at 8.5/10, primarily in his lower back and hip but radiating down his left leg, and initiated the first of a continuing regime of pain medication. On May 11, 2007, Dr. Singh noted Childers' back pain and numbness down the left leg, and ordered an epidural. On June 8, 2007, Dr. Singh noted that Childers had severe back and leg pain extending below the knee, and that the epidural made his pain worse. On June 19, 2007, Childers reported increased back pain with pain in the right leg, and on June 20, 2007, Dr. Singh ordered another epidural after noting that the pain had increased in his back and both legs. On July 6, 2007, Dr. Singh noted that Childers' pain had worsened, that the epidural had not helped him, and that physical therapy would be ordered. On July 20, 2007, Dr. Singh noted that Childers' pain was severe, radiating to both legs. He ordered that physical therapy be stopped due to the worsening back pain; and noted that Childers wanted to proceed with back fusion surgery, despite the many risks involved. On August 6, 2007, Dr. Singh further noted the severe escalation of Childers' back pain, which had now affected his neck.

On August 16, 2007, Childers underwent an independent medical examination by Dr. Levin, who opined that he would not recommend any neurosurgical intervention at this time due Childers' weight and age.

Dr. Levin advised Childers to lose weight and that "neurosurgery would not guarantee him a cure for his problems and it could also possibly lead to more future back operations," and he recommended spinal decompression treatments instead. (Boston's App. 31).

Thereafter, on August 27, 2007, Dr. Singh noted Childers' persistent lower back and leg pain, and that he would begin spinal decompression treatments, as recommended by Dr. Levin. On September 28, 2007, Dr. Singh noted that Childers' pain returned after each spinal decompression treatment; that Childers' "weight ha[d] ballooned to 380 pounds," and his conversation with Childers "about his weight and explained he does have a problem with his back, which might require back fusion, but he is doomed to failure unless he loses some weight." (Boston's App. 32). Dr. Singh recommended that Childers consult a doctor about "lap band or gastric bypass so that he can get his weight down to a more reasonable level." *Id.* On October 12, 2007, Dr. Singh noted that although Childers had completed the spinal decompression treatments, his "symptoms [we]re unchanged," *id.*, and that lap band surgery was being considered. Dr. Singh noted Childers' continued severe pain on October 26, 2007, and again on November 9, 2007.

On November 19, 2007, Childers filed a request for a hearing on his application for adjustment of claim. In Dr. Singh's report of January 16, 2008, which was admitted into evidence, he stated that "in [his] opinion," Childers was "a candidate for" spinal fusion surgery. (Childers' App. 5). However, Dr. Singh believed that because of Childers' current weight, spinal fusion surgery presented "high risk for nonunion and failure." *Id.* Dr. Singh noted that Childers had been unable to lose weight on his own, and that he had referred Childers

for lap band surgery "so that he will lose some substantial weight and potentially improve his back symptoms and possibly even avoid surgery." *Id.*

On February 28, 2008, Childers and Boston attended a hearing before a Single Hearing Member ("the Member") of the Board. The Member ordered that Childers undergo a psychological evaluation to determine whether he would be a candidate for lap band surgery. Dr. Caruana conducted the psychological evaluation,[2] and his report of May 28, 2008, found Childers a reasonable candidate for the proposed lap band surgery.

Additional evidence that was submitted to the Member included two reports sent to Dr. Singh in June of 2008 from a pain specialist physician noting that Childers' pain was 8–10 on a range of 0 to 10, that physical activity aggravated his pain, and that he weighed 386 pounds. Exhibits submitted to the Member also included evidence that since the date of the injury, Childers significantly reduced his cigarette consumption[3] but had not completely quit smoking.

Upon receipt of the above stipulated facts and evidence, the Member issued his findings of fact, conclusions of law, and award on September 4, 2008.[4] In pertinent part, his decision provided as follows:

> [Boston]'s position in its simplest possible terms is that while it would provide treatment to [Childers] for his work related injury (lower back surgery), [Boston] is not obligated to provide the precursor surgery (lap band for weight reduction) that would allow [Childers] to safely undergo the treatment for his work related injury. In other words, [Childers] had pre-existing conditions which would relieve [Boston] of responsibility for providing [Childers]'s treatment.

> The existence of pre-existing conditions is no bar to recovery under Indiana law. *Estey Piano Corporation, Employers Mutual of Wausau v. Steffen,* 164 Ind.App. 239, 328 N.E.2d 240, 242 (1975), quoting from 1A Larson's *Workmen's Compensation Law,* § 38.10 (1973). More recently, the Indiana Court of Appeals made the following observation in reversing the Board's dismissal of a claimant's Application for Adjustment:

>> When a claimant's physical condition combines with an accident at work to produce a single injury, the Board may find that the injury arose out of that claimant's employment within the meaning of the Worker's Compensation Act. *Four Star Fabricators, Inc. v. Barrett,* 638 N.E.2d 792, 796 (Ind. Ct.App.1994).

> *Outlaw v. Erbrich Products Company, Inc.,* 742 N.E.2d 526 (Ind.Ct.App.2001). This adequately describes [Childers]'s current legal predicament, in that his physical condition—his weight and his inability to lose weight without surgery—combined with an injury that arose out of claimant's employment—being hit by a freezer door—to produce a "single injury." [Childers]'s weight

---

**2.** Childers reported to Dr. Caruana that after the back injury, "his weight ... increased dramatically" but he "ha[d] not been able to exercise as part of weight-loss," and that he "ha[d] attempted caloric reduction with no significant results." (Boston's App. 38).

**3.** By July of 2008, Childers had "cut down to 5 [cigarettes] a day" from his rate of approxi-

mately thirty cigarettes a day at the time of the accident. (Boston's App. 44).

**4.** According to the award, the Member "heard the testimony of witnesses and the argument of counsel" as well as receiving the stipulated evidence and exhibits. (Childers' App. 84). However, no transcript or such testimony and argument has been submitted.

surgery is a pre-cursor for the safety of [Childers]'s back surgery in ways that are legally indistinguishable from the requirements of other types of surgical preparation-anesthesia, securing a sanitary surgical environment, providing the availability of proper surgical instruments, etc.—for his back surgery. [Childers] seeks to cooperate with the medical care recommended by [Boston]'s providers. While weight loss surgery was not in the first instance identified as an *a priori* requirement for back surgery does not preclude it from being required as part of the injury received and the treatment required under the Act.

## Conclusions of Law

1. [Boston] must incur the cost of [Childers]'s weight reduction surgery not because it is unrelated to [Childers]'s work accident but because [Childers]'s pre-existing medical/health condition combines with the accident at work to create a single injury for which [Childers] is entitled to treatment.

2. Because of the conclusion that [Childers] is suffering from a single injury such that his pre-existing condition combined with the work accident to create a single injury, [Boston] must continue to pay temporary total disability benefits to [Childers] while he is preparing for, undergoing and recovering from weight loss surgery, and while [Childers] is preparing for, undergoing and recovering from lower back surgery.

## Award

\* \* \*

1. [Childers] is entitled to receive secondary medical treatment, including surgery, for weight reduction as a precursor to his primary entitlement to back surgery to directly repair the result of his work-related accident.

2. [Childers] is entitled to receive temporary total disability and all such other benefits as he may be entitled while preparing for, undergoing and recovering from both his secondary and primary surgeries to treat his work-related injury, until such time as [Childers]'s injury shall become quiescent and be determined to be in a state of maximum medical improvement.

(Pizza's App. 87–88).

Boston then filed an application for review by the Board. The Board held a hearing on December 8, 2008, and "heard arguments of counsel." (Boston's App. 115). On February 8, 2009, the Board issued its order adopting the Member's decision and affirming the award.

## DECISION

When we undertake the review of a decision by the Worker's Compensation Board, we neither reweigh the evidence nor judge the credibility of witnesses. *Global Const., Inc. v. March,* 813 N.E.2d 1163, 1166 (Ind.2004) (citing *Walker v. State,* 694 N.E.2d 258, 266 (Ind.1998)). We review the Board's decision "only to determine whether substantial evidence, together with any reasonable inferences that flow from such evidence, support the Board's findings and conclusions." *Id.* Thus, we give "deference to the Board's findings." *Dial X–Automated Equip. v. Caskey,* 826 N.E.2d 642, 647 (Ind.2005); *see also DePuy, Inc. v. Farmer,* 847 N.E.2d 160, 165 (Ind.2006).

1. *Weight Reduction as Treatment for Work Injury*

■ Boston argues that the Board "incorrectly concluded" that Childers' weight condition "combined with an injury that arose out of his employment to produce a

single injury." Boston's Br. at 8. In its first argument in that regard, Boston claims that the cases cited by the Board are distinguishable and do not, therefore, support its decision.

In *Estey Piano Corp. v. Steffen,* 164 Ind.App. 239, 328 N.E.2d 240, 242 (1975), the Board found that while performing her employment duties, Steffen suffered a back injury—"an accidental injury arising out of and in the course of her employment for Estey." It was noted that six weeks earlier, Steffen had been diagnosed with acute lumbar strain with probable disc syndrome. In our opinion, we cited Larson's Workmen's Compensation Law for the proposition that the employee's condition before the accident, which

> might make him more susceptible to the injury resulting in his disability[,] is no reason for holding that a disease or condition rather than the accident, was the proximate cause of the injury upon which the disability is based,

*Id.* at 242–43. We found that "the evidence presented established the requisite causal relationship Steffens sustained an accidental injury while lifting" a piano keyboard, a task within "performance of her duties," and affirmed. *Id.* at 243.

Boston argues that unlike Steffens, Childers "suffered from the pre-existing health conditions of morbid obesity and smoking"[5] and should not be entitled to treatment therefor. Boston's Br. at 9. However, Boston cannot show us evidence in the record, nor has Boston established, that prior to his injury of March 28, 2007, Childers had a weight problem that impaired his health and/or required medical intervention.

In *Four Star Fabricators, Inc. v. Barrett,* 638 N.E.2d 792 (Ind.Ct.App.1994), the facts revealed that Barrett's job entailed his regularly maneuvering of weighty steel plates. In 1988, a plate struck his back; he was treated for his injury and missed three days of work. Several years later, the volume of such heavy weight maneuvering in his job increased, and one night in 1992, Barrett experienced a "pop" and "sharp pain" in his back when he lifted his infant child at home. *Id.* at 794. We noted that medical opinions and other evidence of record indicated that Barrett's 1988 back injury had combined with the continued, frequent lifting of significant weight to result in "cumulative ... workplace trauma." *Id.* 796. Stating that

> whether the requisite causal relationship exists between the injury and the employment is a question of fact for the Board and, based on the evidence, the Board properly concluded that Barrett had met his burden of proof on that issue,

*id.,* we affirmed.

Boston argues that unlike Barrett, "there is no medical evidence to support the ... Board's conclusion that Childers' weight and being struck with the door combined to produce a single injury." Boston's Br. at 10. We cannot agree. At the time of his injury, Childers weighed approximately 340 pounds; however, as noted above, there is no evidence that Childers' weight was impairing his health or had been found to require treatment. Subsequent to his injury, the medical records reflect that his lower back pain rendered him nearly immobile; the pain and immobility continued; and his weight in-

---

5. There was no order by the Board to provide any smoking cessation treatments for Childers as treatment for his injury; nor are we directed to evidence that his cessation of smoking was *required* prior to any back surgery. However, the parties did stipulate as fact that Childers "received a recommendation to cease smoking prior to proceeding with the back fusion surgery." (App.116).

creased.[6] The evidence supports the Board's conclusion that Childers' injury was related to his employment, and resulted in a weight gain such that it was necessary to provide medical treatment to reduce his weight as part of the treatment for his work-related lower back injury.

In *Outlaw v. Erbrich Products Co., Inc.*, 742 N.E.2d 526 (Ind.Ct.App.2001), the employee alleged that her respiratory condition (occupational asthma) was the result of extended exposure to chemicals in the workplace. The Board denied her claim, with findings that noted her smoking habit. We stated that when "a claimant's physical condition combines with an accident at work to produce a single injury, the Board may find that the injury arose out of that claimant's employment within the meaning of the Worker's Compensation Act," *id.* at 532 (citing *Four Star Fabricators*), and that when a claimant's physical condition "renders him more susceptible to being injured, he is entitled to recover for the full extent of the injury received." *Id.*, (citing *Bethlehem Steel Corp. v. Cummings*, 160 Ind.App. 160, 310 N.E.2d 565, 567 (1974)). We reversed and remanded, "remind[ing] the Board that if it determine[d] that Outlaw's smoking contributed to her lung disease or made her more susceptible to injury as a result of exposure to the chemicals at Erbrich, such a finding would not, in itself require that Outlaw's application for adjustment of claim be denied." *Id.*

Boston argues that "unlike in *Outlaw*," Childers' "non-work-related morbid obesity and smoking habit did not combine with the work accident of being struck by a door to produce a single injury," and that such were "entirely independent conditions." Boston's Br. at 11. However, as stated in *Outlaw*, it was within the Board's purview to find that Childers' initial weight made him "more susceptible to" an injury that would immobilize him, as did the blow to his back, thereby causing him to gain weight such that the necessary treatment for his work-related lower back injury included the lap band procedure. *Outlaw*, 742 N.E.2d at 532.

Boston next argues that Childers' "alleged need for lap-band surgery is the result of a risk that is personal to Childers and, therefore, not" the responsibility of Boston. Boston's Br. at 13. It directs us to *Pavese v. Cleaning Solutions*, 894 N.E.2d 570 (Ind.Ct.App.2008).

In *Pavese*, this court recognized that the statute had been amended, effectively overruling the "positional risk doctrine" adopted in *Milledge v. The Oaks*, 784 N.E.2d 926 (Ind.2003), whereby employers bore the burden of proof in cases involving "neutral risks." 894 N.E.2d at 573. Under the statute as amended, the claimant always bears the burden of proving that an injury arose out of and in the course of employment. *Id.* We proceeded to the question of "whether Pavese's injury arose out of her employment," including whether "the facts indicate a connection between the injury and the circumstances under which the employment occurs." *Id.* at 575 (citing *Milledge*, 784 N.E.2d at 929)). One category of "risks incidental to employment," is that of "risks distinctly associated with employment." *Id.* Such risks are "those we intuitively think of as work connected" and "are generally com-

---

6. On the date of his injury, March 28, 2007, his weight was recorded as approximately 340 pounds. Two weeks later, on April 11, 2007, his weight was recorded as 355 pounds. This fifteen pound gain in two weeks may be reasonably inferred to reflect his body's reac- tion to a dramatically reduced level of physical activity. The record does not provide any evidence that Childers' condition allowed him to increase his physical activity in the next fourteen months, during which he gained another thirty-one pounds.

pensable under the Worker's Compensation Act." *Id.* As to another category of risk, "personal risk," conditions resulting therefrom are generally not compensable under the Act. *Id.*

Here, it is the lower back injury for which the Board awarded the medical treatment that Boston challenges, and it is undisputed that Childers' back injury arose out of and in the course of his employment. The Board made the factual finding, supported by the evidence of record, that the necessary medical treatment for his lower back injury included the precursor lap band procedure.

Boston also argues that public policy in Indiana does not "hold an employer responsible for a medical condition that resulted from another employment or another cause," Boston's Br. at 15, and directs us to the "Apportionment Statute" found at Indiana Code section 22–3–3–12. As it correctly notes, this particular statute was the subject of *U.S. Steel Corp. v. Spencer,* 655 N.E.2d 1243 (Ind.Ct.App.1995), *trans. denied,* wherein ten years after he injured his back while playing baseball, Spencer had suffered a back injury at work on June 15, 1983.

In the initial appeal of the Board's award to Spencer, *U.S. Steel Corp. v. Spencer,* 645 N.E.2d 1106, 1108 (Ind.Ct. App.1995), we explained that the

> Apportionment Statute applies where an employee has a pre-existing impairment which combines with an impairment resulting from a subsequent compensable accidental injury to render him either permanently totally disabled or permanently partially impaired in a greater degree than would have resulted from the subsequent injury had there been no pre-existing impairment.

We remanded the award to the Board to determine whether Spencer was suffering from a condition which impaired or dis-

abled him prior to the 1983 injury; and if so, to apply the statute—awarding him benefits only "for that part of the injury or physical condition resulting from the subsequent injury." *Id.* at 1109. Thereafter, the Board determined "in no uncertain terms, that Spencer did not suffer from a disabling condition" prior to the 1983 accident, which "in and of itself caused his total permanent disability." 655 N.E.2d at 1247. In our decision affirming the award after remand, we noted that the apportionment statute

> attempts to separate those injuries which merely combine with pre-existing impairments or disabilities to render an employee disabled, and those disabilities which are, in fact, merely aggravation of pre-existing impairments or disabilities, from those injuries which occur, perhaps to mentally and physically imperfect employees, solely from events at the current employer's workplace.

*Id.* at 1248; *see also Pillsbury Co. v. Osborne,* 794 N.E.2d 474, 484 (Ind.Ct.App. 2003) (Board "not required to apportion" award when "[n]either the Board's findings nor its conclusions indicate the Board found [employee]'s total permanent disability was due to a pre-existing impairment," and "evidence in the record does not unerringly lead to the conclusion that [employee] had a pre-existing impairment," such that "the Board could have reasonably determined [employee]'s impairments were related solely to the" workplace injury.)

Here, the Apportionment Statute is inapplicable inasmuch as there is no evidence that Childers' weight at the time of the injury was an impairment. The evidence establishes that it was during the next several months after the injury, a period when Childers was immobilized by severe pain, that his weight increased, such that the Board found that the neces-

sary medical treatment for his lower back injury included lap band procedure to reduce his weight.

Boston cites to and argues that we should consider decisions from other jurisdictions that have "addressed the issue of pre-existing non-work related physical problems." Boston's Br. at 17. However, we do not find Boston's cited authority in that regard directly on point. *State ex rel. Wyoming Workers' Comp. Div. v. Girardot,* 807 P.2d 926, 929 n. 2 (Wyo.1991), expressly noted that "weight loss treatment-back injury cases" were inapposite to its consideration therein of "a heart condition-hernia operation situation." In *Duplessis v. Orleans Parish School Bd.,* 850 So.2d 791 (La.App.2003), the claimant suffered a spinal injury in 1984 while a Parish employee; employed elsewhere after 1990, she was claiming benefits from Parish after suffering another injury in 2000. Moreover, we note that other jurisdictions have allowed workers compensation benefits that include weight-loss treatment as part of treatment for a work-related injury. *See Braewood Convalescent Hosp. v. Workers' Comp. Appeals Bd.,* 34 Cal.3d 159, 193 Cal.Rptr. 157, 666 P.2d 14 (1983); *Van Blokland v. Oregon Health Sciences Univ.,* 87 Or.App. 694, 743 P.2d 1136 (1987); *Mellon Security & Sound v. Custer,* 687 S.2d 1372 (Fla.App.1997); *State ex rel Miller v. Industrial Comm'n.,* 71 Ohio St.3d 229, 643 N.E.2d 113 (1994); *Krier v. John Morrell & Co.,* 473 N.W.2d 496 (S.Dak.1991).

We find Indiana law and the reasoning of the cases relied upon by the Board sufficient to our task, and to sustain the Board's award. It is undisputed that Childers suffered a lower back injury in the course of his employment, and that non-surgical options including epidural injections, physical therapy, and spinal decompression treatments had provided him with no relief from his persistent, immobilizing back pain. Further, subsequent to the back injury, Childers was unable to exercise and experienced significant weight gain, and the record contains evidence that Childers' efforts to lose weight by other means had been unsuccessful. There is no evidence that Childers' weight at the time of the injury precluded successful resolution of his pain, and there is evidence that after the weight gain, further treatment for his pain was "doomed to failure." (App.38). Finally, the Board had Dr. Singh's report, which recommended that Childers should have the lap band procedure "so that he will lose some substantial weight and potentially improve his back symptoms and possibly even avoid surgery." (Childers' App. 5).

Thus, evidence supports the Board's conclusion of the requisite causal relationship between Childers' work-related injury and the need for lap band treatment. *Estey Piano Corp.,* 328 N.E.2d at 243. As in *Four Star Fabricators,* 638 N.E.2d at 794, evidence supports the Board's conclusion that Childers met his burden of proof in establishing that his weight at the time of the injury, the blow to his lower back, and the immobility resulting from the injury resulted in an overweight condition with back pain—*i.e.,* "a single injury" which required the lap band procedure. (Boston's App. 119). Further, consistent with *Outlaw,* Childers' weight at the time of the injury made him "more susceptible" to the immobilization that resulted from his workplace back injury, thereby requiring the lap band procedure as part of the necessary treatment for that injury. 742 N.E.2d at 542.

Finally, Boston argues that although the Indiana's Worker's Compensation statute authorizes the Board to oversee the medical treatment provided to employees by employers following accidents, in this case

the award essentially mandates that the Board "oversee Childers' weight loss and smoking cessation program,"[7] and that the Board act as "ultimate judge" of his adequate compliance. Boston's Br. at 19, 20. Upon review, we note that the portion of the statute cited by Boston applies after the "employee's injury has been adjudicated by ... award on the basis of permanent partial impairment ...," an event which has not yet occurred. I.C. § 22-3-3-4(c). Further, Boston cites no authority for the proposition that a continuing oversight role by the Board renders an award erroneous.

■ Also, as Childers correctly responds, the applicable provisions state that "[a]fter an injury and prior to an adjudication of permanent impairment, the employer shall furnish" treatment as deemed necessary by the Board, and that "[d]uring the period of temporary total disability resulting from the injury, the employer shall furnish" treatment deemed necessary by the Board. I.C. 22-3-3-4(a) and (b). The interpretation of a statute by the administration charged with the duty of its enforcement "is entitled to great weight, unless [the] interpretation would be inconsistent with the statute itself." *Utility Ctr., Inc. v. City of Ft. Wayne,* 868 N.E.2d 453, 458 (Ind.2007) (quoting *LTV Steel Co., v. Griffin,* 730 N.E.2d 1251, 1257 (Ind. 2000)). Boston's argument implicitly concedes that the Board holds the authority to order the treatment that it did in the award. Further, the evidence supports the Board's conclusion that the treatment is necessary. Therefore, Boston's argument that the award should be reversed based on the continuing supervision of the Board fails.

2. *Temporary Total Disability*

■ Boston also argues that the award erroneously requires it to continue to pay

temporary total disability benefits to Childers while he is preparing for, undergoing, and recovering from both the lap-band procedure and back surgery. According to Boston, all of Childers' treating physicians had recommended that he lose weight, but he failed to comply with that recommendation, and pursuant to Indiana Code section 22-3-3-7(c), Boston "is not required to continue paying temporary total disability to him during his 'noncompliance,'" *i.e.,* "until Childers begins to lose weight." Boston's Br. at 21.

The cited statutory provision allows the termination of temporary disability benefits by the employer if "the employee has refused to undergo a medical examination under section 6 of this chapter or has refused to accept suitable employment under section 11." I.C. § 22-3-3-7(c). There is no evidence that Childers has refused to undergo any medical examination (or refused to accept suitable employment). Therefore, its argument is without merit and must fail.

Affirmed.

BAILEY, J., and ROBB, J., concur.

---

7. As already noted, the award did not provide for smoking cessation treatment.