Bobby SMITH, Appellant–Plaintiff,

v.

HENRY C. SMITHERS ROOFING
CO., Appellee–Defendant.

No. 93A02–0112–EX–808.

Court of Appeals of Indiana.

July 9, 2002.

Marcia J. Cossell, Lee, Burns & Cossell, LLP, Indianapolis, Indiana, Attorney for Appellant.

Mark Gerth, Kightlinger & Gray, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Bobby L. Smith ("Smith") was employed by Henry C. Smithers Roofing ("Smithers Roofing") and injured in an automobile accident while acting within the scope of his employment. He was unable to return to work after the accident and Smithers Roofing's worker's compensation insurer paid temporary total disability benefits to Smith for over two years. The insurer terminated disability and medical benefits when it learned that Smith had a pre-existing medical condition that was possibly responsible for his continuing health problems.

Smith subsequently filed an Application for Adjustment of Claim with the Worker's Compensation Board ("the Board"). After a hearing was held, one Board member issued an award in favor of Smithers Roofing finding that Smith had suffered only soft tissue injuries as a result of the accident and his continuing health problems were due to his pre-existing condition. After reviewing the hearing member's award, the full Board adopted and affirmed that decision. Smith appeals and we find the following issue to be dispositive: whether the hearing members findings were stated with sufficient specificity to permit intelligent appellate review.

We reverse and remand for proceedings consistent with this opinion.

### Facts and Procedural History

On March 7, 1995, Smith had completed a job for his employer, Smithers Roofing, and was returning to the office while driving a company truck when he was rear-ended. As a result of the impact of the accident, Smith's head struck the rear window of the truck, which caused the window to break. Smith was taken to the Methodist Hospital emergency room where he complained of pain in his neck and back. He was x-rayed and examined, then released without being hospitalized. He was told to take ibuprofen for pain and to see his family doctor if his pain continued.

Three days later, Smith was examined at the St. Joseph Hospital emergency room in Kokomo, Indiana, for continuing pain. X-rays taken of his spine showed evidence of osteoarthritis[1] and Smith was instructed to apply heat to his lower back and take ibuprofen for the pain. Appellant's App. p. 25. When Smith continued to complain of pain in his lower back, his family physician referred him to Dr. John Beghin, an orthopedist specializing in the care and treatment of the back. Dr. Beghin diagnosed Smith as having severe degenerative disc disease[2] in the lumbar spine and prescribed a course of physical therapy, but released Smith to return to

---

1. Osteoarthritis is a disease affecting the joints that causes the surface layer of cartilage of the bone to break down and wear away causing pain, swelling, and loss of motion of the joint. *See* National Institute of Arthritis and Musculoskeletal and Skin Diseases website, *available at* http://www.niams.nih.gov/hi/topics/arthritis/oahandout.htm (last visited June 10, 2002).

2. As the spine ages, discs in the spine become more fibrous in nature due to loss of water content. Degenerative disc disease develops when, as a result of the loss of water content, settling begins within the disc and degenerative bone spurs form around the disc, which can cause pain. *See* Sonoran Spine Center website *available at* http://www.sonoranspine.com/ddiscdisease.htm (last visited June 10, 2002).

work without restrictions, although he recognized that Smith's activities could be limited by the pain he was experiencing. Appellant's App. pp. 29–30. However, Smith's family physician determined that while Smith could go back to work, he could lift nothing greater than fifteen pounds and could not climb, all of which are requirements for a roofer. Appellant's App. pp. 27–28.

Smith underwent a course of physical therapy for three months and was treated by Dr. Choi, an orthopedic surgeon in Kokomo. Dr. Choi prescribed Lortab and Valium, placed Smith in a cervical collar and a lumbosacral support, and determined that Smith could not return to work. Appellant's App. p. 33. During this time, Smith's pain did not abate, but actually worsened and spread to his hips, legs, and shoulders. In August, 1995, Smithers Roofing's worker's compensation insurer referred Smith to Dr. Michael Coscia of Orthopedics Indianapolis for further treatment.

When Dr. Coscia examined Smith, Smith complained of tenderness in both shoulders, pain in his spine, right buttock pain, and pain radiating down the back of his left thigh into his foot. X-rays revealed that Smith had advanced degenerative changes in the head of the femur in his right hip, cervical spondylosis with severe chronic strain, and lumbar spondylosis.[3] Appellant's App. p. 38. Dr. Coscia recommended a spinal decompression to relieve the pain radiating into Smith's foot and to relieve the stenosis [4] caused by the degenerative changes in Smith's spine. Dr. Coscia referred Smith to Dr. Dean Maar for treatment of his hips and to Dr. Sanford Kunkel for treatment of his shoulder complaints.

While Smith was being treated for the pain in his back, shoulders, and leg, doctors discovered that Smith was suffering from avascular necrosis, which is a disease resulting from the temporary or permanent loss of the blood supply to the bones. Due to the lack of blood supply, the bone tissue dies and causes the bone to collapse.[5] Smith also suffers from hemoglobin SC disease, a type of sickle cell disorder where the individual has two abnormal hemoglobins. Individuals with SC disease usually develop chronic eye, bone, and/or kidney problems.[6]

Dr. Maar found avascular necrosis present in both of Smith's hips and elected to perform a surgical procedure on each hip where he drilled holes in the head of both femurs in the hip joints in an attempt to improve blood flow, which if successful, would result in regeneration of the bone in both hips. The procedure was successful in the left hip, but not the right hip, which showed continuing degeneration of the femoral head, and Smith's pain continued. Therefore, Dr. Maar performed a total hip

---

3. Cervical spondylsis, or arthritis of the neck, can result from bony spurs and problems with ligaments and discs. The condition can cause the spinal canal to narrow and compress the spinal cord and nerves to the arms. Lumbar spondylsis causes pain to the lower back. *See* American Academy of Orthopaedic Surgeons website *available at* http://orthoinfo.aaos.org (last visited June 10, 2002).

4. Spinal stenosis causes the spinal canal to narrow and pinch the spinal cord and nerves. Individuals with spinal stenosis suffer from lower back pain and pain in the legs. *See*

American Academy of Orthopaedic Surgeons website *available at* http://orthoinfo.aaos.org (last visited June 10, 2002).

5. *See* National Institute of Arthritis and Musculoskeletal and Skin Diseases website *available at* http://www.niams.nih.gov/hi/topics/avascular–necrosis (last visited June 4, 2002).

6. *See* Sickle Cell Society website *available at* http://www.sicklecellsociety.org/healthpr.htm (last visited June 4, 2002).

replacement of Smith's right hip. Appellee's App. p. 43.

Dr. Kunkel's examination of Smith's shoulders revealed that he was suffering from avascular necrosis of the head of the humerus bone in both the left and right shoulders and Dr. Kunkel found evidence of other degenerative changes in the shoulder joints. When other more conservative treatment failed, Dr. Kunkel recommended and performed joint replacements of both of Smith's shoulders. Appellant's App. pp. 44–47.

Due to his continuing pain and medical problems, Smith has never been able to return to work. Smithers Roofing's worker's compensation insurer paid temporary total disability benefits to Smith for one hundred and nine (109) weeks at a weekly rate of $428.00 in addition to certain medical expenses. Appellee's App. p. 64. However, when the insurer was informed that Smith's continuing medical treatment was possibly the result of his SC disease and avascular necrosis, which were conditions existing before the accident, it terminated disability and medical benefits. Smith then filed an Application for Adjustment of Claim with the Worker's Compensation Board.

On September 13, 2000, a hearing was held before hearing judge John Rader. Evidence introduced at the hearing included the depositions of Smith, Dr. Coscia, Dr. Maar, and Dr. Kunkel, as well as medical records of other physicians who treated Smith. On December 22, 2000, Rader entered an award in favor of Smithers Roofing finding that Smith suffered only soft tissue injuries as a result of the accident and that Smith's continuing health problems were due to his pre-existing conditions. Smith then filed an Application for Review by the Full Worker's Compensation Board. After a hearing held on October 23, 2001, the Full Board adopted and affirmed Rader's decision. Smith appeals.

## Decision and Discussion

Smith argues that the Board's findings are not sufficiently specific to permit meaningful appellate review of the decision. Specifically, Smith contends that the hearing member's findings do not set out all conflicting relevant evidence upon the issue of causation and that "[a]t a minimum, it was necessary for the Hearing Judge to reference medical records and indicate why the doctors and the records were not considered in the findings." Reply Br. at 4. Smith also argues that, without specific findings, "it is impossible to determine whether the Workers Compensation Board has addressed" the records of Dr. Maar, Dr. Kunkel, Dr. Choi, and Dr. Coscia. Br. of Appellant at 14.

"It is the duty of the Worker's Compensation Board, as trier of fact …, to make findings which reveal its analysis of the evidence and are specific enough to permit intelligent review of the Board's decision." *Smith v. Bob Evans Farms, Inc.,* 754 N.E.2d 18, 23 (Ind.Ct.App.2001), *trans. denied* (quoting *K–Mart Corp. v. Morrison,* 609 N.E.2d 17, 27 (Ind.Ct.App. 1993), *trans. denied*). "Specific findings of basic fact must reveal the Board's determination of the various relevant sub-issues and factual disputes which, in their sum, are dispositive of the particular claim or ultimate factual question before the Board." *Outlaw v. Erbrich Prods. Co., Inc.,* 742 N.E.2d 526, 530–31 (Ind.Ct.App. 2001) (citing *Perez v. U.S. Steel Corp.,* 426 N.E.2d 29, 33 (Ind.1981)). The Board's findings must be specific enough to supply the reader with an understanding of its reasons, based on the evidence, for its finding of ultimate fact. *Id.* at 531. "The more complex or technical the sub-issues or factual disputes are in any claim, the greater the particularity which is needed

to satisfy the various purposes of the requirement." *Id.* Where the factual dispute involves complex medical issues, the Board is required to issue particularly detailed findings. *See id.*

> The purpose of the Board issuing findings of fact is to create a road map so that the readers of the opinion—including this court—can clearly follow the reasoning used by the Board to reach its ultimate conclusion. When the findings of fact are straightforward and detailed, the Board's position is bolstered; however, when the Board's findings are vague and incomplete, it results in guesswork on the part of the readers of the decision.

*Outlaw v. Erbrich Prods. Co., Inc.,* 758 N.E.2d 65, 68 (Ind.Ct.App.2001).

In *Perez,* to facilitate the Worker's Compensation Board's "discharge of its statutory duty," our supreme court discussed what constitutes satisfactory findings of fact, and stated:

> It is a simple, straightforward statement of what happened. A statement of what the Board finds has happened; not a statement that a witness, or witnesses, testified thus and so. It is stated in sufficient relevant detail to make it mentally graphic, i.e., it enables the reader to picture in his mind's eye what happened. And when the reader is a reviewing court the statement must contain all the specific facts relevant to the contested issue or issues so that the court may determine whether the Board has resolved those issues in conformity with the law.

*Perez,* 426 N.E.2d at 32–33 (quoting *Whispering Pines Home for Senior Citizens v. Nicalek,* 333 N.E.2d 324, 326 (Ind.Ct.App. 1975)).

In this case, the hearing judge made the following findings of fact and conclusions of law, which were adopted and affirmed by the full Board:

1. It is further found that the plaintiff had pre-existing sickle cell disease, hemoglobin sc with pre-existent evidence of complications related to chronic hemoglobinopathy prior to the accident in question.

2. It is further found that plaintiff's condition of avascular necrosis is not causally connected to the accidental injury herein but is in fact connected to his pre-existing condition.

3. It is further found that the plaintiff had pre-existing degenerative changes to his spine and the accident in question caused soft tissue injuries which have resolved on or before the time temporary total disability terminated.

4. It is further found, therefore, that plaintiff should take nothing by his application filed herein.

Appellant's App. p. 6.

The hearing judge's findings are merely conclusions and do not demonstrate to our court which facts the hearing judge relied upon in reaching his decision. This court has reviewed over one thousand pages of evidence admitted at the hearing, including various depositions from Smith's treating physicians and Smith's medical records. In their depositions, Smith's physicians indicated that the accident, while not the proximate cause of all of Smith's injuries, aggravated his pre-existing condition of avascular necrosis.

It is a well-settled rule in Indiana that an " 'employer takes an employee as he finds him.' " *U.S. Steel Corp. v. Spencer,* 655 N.E.2d 1243, 1247 (Ind.Ct.App. 1995), *trans. denied* (quoting *Goodman v. Olin Matheison Chem. Corp.,* 174 Ind.App. 396, 405, 367 N.E.2d 1140, 1146 (1977). "An injury otherwise compensable under the Workmen's Compensation Act entitles an employee to benefits commensurate with the total disability sustained, includ-

ing the aggravation or triggering of latent pre-existing conditions." *Hansen v. Von Duprin, Inc.,* 507 N.E.2d 573, 577 (Ind. 1987). In his briefs submitted to both the hearing judge and the full Board, Smith argued that the accident aggravated his pre-existing condition. It is impossible to determine, from the findings set out above whether the hearing judge adequately considered, or considered at all, whether the accident aggravated Smith's pre-existing condition. Accordingly, on remand, the Board should consider and enter findings as to whether the accident aggravated Smith's avascular necrosis and the degenerative changes in his spine under the *Hansen* and *U.S. Steel* line of authority.

Reversed and remanded for proceedings consistent with this opinion.

BARNES, J., and KIRSCH, J., concur.