**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 12 2012, 8:52 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DOUGLAS A. MULVANEY**
Elkhart, Indiana

ATTORNEY FOR APPELLEE:

**MATTHEW J. HAGENOW**
Newby, Lewis, Kaminski & Jones, LLP
LaPorte, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NORRENE SULLIVAN, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1202-EX-143 |
| | ) | |
| KINDRED NURSING CENTER, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE INDIANA WORKER'S COMPENSATION BOARD
Case No. C-180337

**July 12, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Norrene Sullivan filed an Application for Adjustment of Claim with the Worker's Compensation Board of Indiana (the "Board") against her former employer, Kindred Nursing Center ("Kindred"). A Single Hearing Member awarded Sullivan compensation for the permanent partial impairment of her low back, but denied benefits for her alleged temporary total disability, additional medical treatment, and permanent and total disability. Thereafter, Sullivan petitioned the full Board, which affirmed the Single Hearing Member's decision. Sullivan now appeals and presents a single dispositive issue for our review, namely, whether the Board's findings are not sufficiently specific to permit meaningful appellate review of the decision.

We remand with instructions.

**FACTS AND PROCEDURAL HISTORY**

On March 19, 2004, while employed by Kindred and working at the Regency Place nursing home in South Bend, Sullivan was operating a floor "scrubbing machine" when it malfunctioned and "knocked [her] into the wall." Appellant's App. at 38. Sullivan sought medical treatment the next day for back pain, and she notified her supervisor, Renee Tharp, about the accident and her injury. Tharp filled out an Employee Incident Report, and Kindred "accepted the claim as compensable" under its worker's compensation policy. Brief of Appellee at 2.

Sullivan saw Dr. Todd Graham for her work-related back injury on April 8, 2004. On that date, Sullivan reported back pain and numbness running down her right leg and into her toes. Dr. Graham noted a diagnosis of a thoracolumbar contusion and

2

recommended "a short course of physical therapy with transition to a home exercise program." Appellant's App. at 43. Dr. Graham released Sullivan to work with a restriction of no lifting, pushing or pulling more than ten pounds and no bending below knee height.

On June 3, Dr. Graham examined Sullivan and concluded that she had reached maximum medical improvement. In his notes from that visit, Dr. Graham stated that he had offered Sullivan a steroid injection to treat her back pain, but she had rejected that treatment. Dr. Graham also stated that Sullivan was not a surgical candidate, and he observed that she had stated that "she does not have any plan or consideration of surgery anyway." Id. at 62. Dr. Graham assigned permanent work restrictions for Sullivan of no lifting, pushing, or pulling more than twenty pounds. And he assigned a permanent partial impairment ("PPI") rating of 5% of the whole person. Kindred's worker's compensation carrier paid Sullivan temporary total disability benefits from March 20 through May 23, 2004.

Sullivan did not agree that she had reached maximum medical improvement and sought an independent medical examination ("IME"), which was scheduled by the Board for August 16. But Sullivan failed to appear for the IME. Thereafter, Sullivan, without getting authorization for additional medical treatment from Kindred or the worker's compensation carrier, sought medical treatment with Dr. Harold Barnard, Dr. Karen Meyer, Dr. C. Matthew Gibellato, Dr. Walter Langheinrich, Dr. Kevin Drew, Dr. Jon Kubley, Dr. Byron Holm, and Dr. Jamie Gottlieb. Sullivan underwent additional

3

physical therapy and, in February 2009, Sullivan underwent surgery for an L5-S1 anterior lumbar fusion, decompression and instrumented posterolateral fusion.

Dr. Gottlieb, Sullivan's surgeon, stated that the surgery was required to repair the L5-S1 disc herniation that was related to her injury at work on March 19, 2004. Following the surgery, Dr. Gottlieb assigned Sullivan a PPI rating of 15% of the whole person and permanent restrictions of no lifting more than five pounds with any frequency, limited bending and twisting, and the ability to change positions every thirty to forty-five minutes. Dr. Gottlieb stated that Sullivan was a candidate for Social Security disability. Sullivan has not worked since the date of the accident in 2004.

Kindred's worker's compensation carrier has paid the following benefits to Sullivan: $5,686.43 in medical expenses; total temporary disability in the amount of $3,116.75 for the period March 20, 2004 through May 23, 2004; and total permanent disability in the amount of $230.54 for the period May 24, 2004 to June 2, 2004.

Sullivan filed her application for adjustment of claim on March 16, 2006, seeking benefits beyond what Kindred had provided. In lieu of a hearing, the parties filed written submissions, including exhibits, to the Board. On July 20, 2011, a Single Hearing Member entered the following relevant findings of fact and conclusions of law:

4. Sullivan claims that as a result of the alleged incident she sustained an injury to her lower back which has caused her to be permanently and totally disabled.

* * *

10. An MRI of the lumbar spine was completed on May 10, 2004. The MRI findings were a small midline protrusion at L5 of unknown origin or age and no impingement of the right S1 nerve root or the thecal sac.

4

11.     As of May 24, 2004, Sullivan was released to return to work with modified duties and modified hours.

12.     Dr. Todd Graham determined that Sullivan had reached maximum medical improvement as of June 3, 2004, and issued a 5% whole person PPI at that time.

13.     Sullivan disagreed with the determination that she had reached maximum medical improvement and requested an Independent Medical Examination.

14.     An Independent Medical Examination was scheduled by the Board to take place by [sic] Dr. Jonathon Javors on August 16, 2004. Sullivan failed to appear for the evaluation.

15.     After an issue arose concerning Sullivan's absence from the IME with Dr. Javors and payment for another appointment with Dr. Javors, Sullivan elected (on her own) to be evaluated by Dr. Walter Langenheinrich, a neurosurgeon in South Bend.

16.     Dr. Langenheinrich determined that Sullivan had a 7% whole person PPI as a result of the incident.

AWARD

IT IS, THEREFORE, CONSIDERED, ORDERED AND DECREED by the Worker's Compensation Board of Indiana that Plaintiff has failed to meet her burden of demonstrating that Kindred Nursing is obligated to pay any additional medical benefits; that she is entitled to additional temporary total disability benefits; or that she is entitled [to] permanent and total disability benefits as a result of her alleged low back injury from March 2004. Therefore the Application for Adjustment of Claim is denied with respect to such claims.

The Plaintiff has met her burden of proof of demonstrating that she is entitled to permanent partial impairment benefits for the low back injury and is therefore entitled to recover PPI benefits on the basis of a 5% whole person PPI rating, which is an award (based on the date of injury) of $6,500.00.

Appellant's App. at 6-7. Sullivan appealed to the Full Board, which unanimously affirmed the Single Hearing Member's decision. This appeal ensued.

5

**DISCUSSION AND DECISION**

**Standard of Review**

In challenging the Board's decision, Sullivan confronts a stringent standard of review. When we review a decision of the Full Worker's Compensation Board, "we are bound by the factual determinations of the Board and will not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion." Howard v. U.S. Signcrafters, 811 N.E.2d 479, 481 (Ind. Ct. App. 2004). We must disregard all evidence unfavorable to the decision and examine only the evidence and the reasonable inferences therefrom that support the Board's findings. Id. We will not reweigh the evidence nor judge the credibility of the witnesses. Id.

However, we do not reach the merits of Sullivan's appeal because, as Sullivan correctly points out, the Board failed to make findings or conclusions specific enough to permit intelligent review on appeal. In Smith v. Henry C. Smithers Roofing Co., 771 N.E.2d 1164, 1167 (Ind. Ct. App. 2002), we addressed this issue as follows:

> "It is the duty of the Worker's Compensation Board, as trier of fact . . . , to make findings which reveal its analysis of the evidence and are specific enough to permit intelligent review of the Board's decision." Smith v. Bob Evans Farms, Inc., 754 N.E.2d 18, 23 (Ind. Ct. App. 2001) (quoting K-Mart Corp. v. Morrison, 609 N.E.2d 17, 27 (Ind. Ct. App. 1993), trans. denied) trans. denied. "Specific findings of basic fact must reveal the Board's determination of the various relevant sub-issues and factual disputes which, in their sum, are dispositive of the particular claim or ultimate factual question before the Board." Outlaw v. Erbrich Prods. Co., 742 N.E.2d 526, 530-31 (Ind. Ct. App. 2001) [("Outlaw I")] (citing Perez v. U.S. Steel Corp., 426 N.E.2d 29, 33 (Ind. 1981)). The Board's findings must be specific enough to supply the reader with an understanding of its reasons, based on the evidence, for its finding of ultimate fact. Id. at 531. "The more complex or technical the sub-issues or factual disputes are in any claim, the greater the particularity which is needed to satisfy the various

6

purposes of the requirement." <u>Id.</u> Where the factual dispute involves complex medical issues, the Board is required to issue particularly detailed findings. <u>See</u> <u>id.</u>

> The purpose of the Board issuing findings of fact is to create a road map so that the readers of the opinion— including this court—can clearly follow the reasoning used by the Board to reach its ultimate conclusion. When the findings of fact are straightforward and detailed, the Board's position is bolstered; however, when the Board's findings are vague and incomplete, it results in guesswork on the part of the readers of the decision.

<u>Outlaw v. Erbrich Prods. Co.</u>, 758 N.E.2d 65, 68 (Ind. Ct. App. 2001) [("<u>Outlaw II</u>")].

Here, the Single Hearing Member's "Findings of Fact and Conclusions of Law," which were adopted by the Full Board, are inadequate in that there is no mention of the credibility of the myriad of competing medical opinions offered by Sullivan in support of her claim, and there is no explanation for the adoption of the 5% PPI rating over the 7% PPI rating, both of which were included in the findings. Indeed, the Board's findings consist solely of stipulated or undisputed facts and do nothing to demonstrate that the Board considered the evidence and made findings and conclusions based thereon.

However, as we explained in <u>Outlaw v. Erbrich Products Co.</u> 777 N.E.2d 14, 27-28 (Ind. Ct. App. 2002), <u>trans. denied</u>, ("<u>Outlaw III</u>"):

> while the Board is always obligated to enter findings that provide the reader and the reviewing court with an understanding of the Board's reasons for its decision, when the Board delivers a negative judgment adverse to the claimant, who bears the burden of proof, the Board does not need to make specific findings of fact disproving a plaintiff's claim for entitlement to benefits. Rather, the Board need only determine that the plaintiff has failed to prove entitlement to the benefits. Thus, the Board in the present case was not required to make specific factual findings negating or disproving Outlaw's entitlement to benefits. . . . Upon concluding that Outlaw was not entitled to benefits, the Board was only obligated to find that Outlaw had

7

failed to meet her burden of proof <u>and to enter findings explaining the reasons for this determination with sufficient particularity</u>.

(Emphasis added).

Here, we remand to the Board with instructions that it enter new findings of fact and conclusions of law consistent with this opinion.

Remanded with instructions.

RILEY, J., and DARDEN, J., concur.