# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**SALLY P. NORTON**
Doran, Blackmond, Norton LLC
Granger, Indiana

ATTORNEY FOR APPELLEE:

**JULIE A. DUGAN**
Dugan, Repay & Rybicki, P.C.
St. John, Indiana

FILED

Apr 26 2013, 9:29 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PLATINUM CONSTRUCTION GROUP, LLC, | ) | |
| | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1210-EX-882 |
| | ) | |
| CHRISTOPHER COLLINGS, | ) | |
| | ) | |
| Appellee-Claimant. | ) | |

APPEAL FROM THE INDIANA WORKER'S COMPENSATION BOARD
The Honorable Linda P. Hamilton, Chairperson
Application No. C-202818

**April 26, 2013**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Platinum Construction Group, LLC ("Platinum") appeals an order of the Worker's Compensation Board ("the Board") awarding benefits to former Platinum construction supervisor Christopher Collings for injuries he suffered to his back, neck, and hip during a 2009 accident on the job. Platinum contends that the Board erred in awarding Collings sums for temporary total disability ("TTD"). Platinum also challenges the sufficiency of the findings supporting the Board's order awarding Collings sums for permanent partial impairment ("PPI"). We affirm.

**Facts and Procedural History**

In 2009, thirty-six-year-old Collings was working as a construction superintendent for Platinum. He had worked for Platinum for four years and had fifteen years' previous experience in construction. On January 30, 2009, while framing a house, a twenty-by-fourteen-foot wall fell on him, causing injury to his neck, back, and hip. Platinum instructed that he be evaluated at a certain clinic rather than at a hospital. Platinum deemed Collings's injury compensable and provided authorized treatment through Drs. Michael Yergler and Todd Graham, who diagnosed Collings with a non-displaced fracture of the iliac crest and disc herniations at C5-6, C6-7, T2-3, and T4-5. Dr. Yergler ordered that Collings remain completely off work until March 6, 2009, during which time Collings received TTD benefits totaling $3180. On March 6, 2009, Dr. Yergler released Collings to full duty, and his TTD benefits were terminated. Collings was never placed on limited duty. About that time, Platinum laid off its employees and closed its doors, so Collings filed a claim for

unemployment compensation. He attempted to work construction for two other contracting companies, but his pain prevented him from performing the tasks associated with the work. In total, he earned about $1200 from his limited work for the two companies. He also started his own construction company but did not earn any income because his ongoing physical limitations prevented him from completing any projects.

Collings was released from authorized care in November 2009, whereupon Dr. Yergler rated his hip PPI at 0%, and Dr. Graham rated his neck and back PPI at 7%. He continued to experience pain and consulted with Dr. Robert Martino, who determined that additional treatment was necessary. Due to conflicting conclusions by the various doctors, Platinum sought an independent medical examination ("IME"). The Board appointed Dr. Peter Carney, who determined that Collings had been disabled since the time of the accident, that he was not at maximum medical improvement ("MMI"), and that a work hardening program was necessary. Collings participated in a work hardening program from May 2 to May 26, 2011. In December 2011, Collings sought a second opinion at the Spine Institute, where Dr. Jamie Gottlieb examined him. In an in-depth report, Dr. Gottlieb found that Collings's injuries left him limited in his daily activities and rated Collings's PPI at "18% based on AMA guidelines." Ex. I.

In early 2012, Collings filed an application for adjustment of claim with the Board. After a hearing on the matter, the hearing member issued a decision containing findings of fact and conclusions of law, awarding Collings $35,526 in additional TTD benefits, plus

$26,210 in PPI benefits, for a total of $61,736 plus limited attorney's fees. Appellant's App. at 7. Platinum appealed to the full Board.

In an order dated October 10, 2012, the Board expressly adopted the hearing member's findings and conclusions and affirmed the member's decision. Platinum now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

Platinum challenges the Board's order awarding worker's compensation benefits to Collings, and as such, confronts a stringent standard of review. When we review a decision of the full Worker's Compensation Board, we are bound by the Board's factual determinations and will not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. *Howard v. U.S. Signcrafters*, 811 N.E.2d 479, 481 (Ind. Ct. App. 2004). We neither reweigh evidence nor judge witness credibility. *Id*. Rather, we must disregard all evidence unfavorable to the decision and examine only the probative evidence and reasonable inferences supporting the Board's findings. *Id*.

*I. Temporary Total Disability*

Immediately following his injury, Collings received a total of about $3000 for five weeks of TTD. Platinum asserts that the Board erred in awarding Collings an additional $35,526 for TTD. The purpose of awarding TTD payments under the Indiana Worker's Compensation Act is to compensate an employee for his loss of earning power because of an accidental injury arising out of, and in the course of, his employment. Ind. Code § 22-3-2-

4

2(a); *Ballard v. Book Heating & Cooling, Inc.*, 696 N.E.2d 55, 57 (Ind. Ct. App. 1998), *trans.*

*denied*.

> During the period of time that a claimant undergoes treatment for an injury, it is relevant whether the injured workman has the ability to return to work of the *same kind or character*. If the injured worker does not have the ability to return to work of the same kind or character during the treatment period, he is temporarily totally disabled and may be entitled to benefits.

*Id*. (emphasis added) (citations omitted).

Here, the parties do not dispute that Collings's injuries arose out of, and in the course of, his employment. However, Platinum specifically argues that Collings was ineligible for additional TTD benefits because he applied for and received unemployment benefits. The premise behind this argument is that the two claims are incongruous because a TTD benefits claimant is asserting an inability to work, whereas an unemployment benefits claimant is asserting that he is able-bodied, available, and making an effort to find work. *Id*. at 57-58. *See also* Ind. Code § 22-4-14-3(b) (stating that an unemployed person is eligible for benefits only if physically and mentally able to work, available for work, making an effort to secure work, and participating in reemployment services). In *Ballard*, another panel of this Court affirmed the Board's denial of TTD benefits to a claimant who was also receiving unemployment benefits, where the findings of fact stated that the claimant was physically and mentally able to work. *Id*. at 58. The *Ballard* court noted that our statutes do not specifically prohibit a claimant from receiving both types of benefits and examined the varying approaches taken in other jurisdictions, i.e., allowing, denying, or reducing one type of benefits when the claimant is already receiving the other. *Id*. at 57-58. The *Ballard* court

5

seemed most concerned that claimants not receive a windfall in the form of dual benefits, while simultaneously raising mutually exclusive arguments about his physical ability/inability to work. *Id*.

Here, the Board considered the extent of Collings's injuries, the authorized physician's decision to release him to full and not limited work duty, and Platinum's decision to lay off all of its employees and close its doors, and determined that Collings was unable to meet the physical demands of returning to work of the same type and character. The following findings offer insight into the Board's reasoning concerning the effect of unemployment benefits on Collings's eligibility for TTD benefits:

6. With no TTD benefits and no job to return to, Collings filed for unemployment benefits, which he received from March 28, 2009 through March 6, 2011 at a rate of $390 per week, leading to a total benefit amount of $37,050. Collings also attempted to work during that time and earned approximately $1200.

….

13. Collings was not fit to return to work without limitation as of March 6, 2009.

14. No evidence exists that Platinum could have or would have provided light duty within the restrictions outlined by Dr. Carney [the independent medical examiner].

15. The worker's compensation statute allows for the collection of TTD benefits if the claimant cannot return to work of the *same kind and character*. Here, Collings was a construction worker that could not perform his job duties in [sic] as outlined by Dr. Carney.

16. Unemployment requires only that a claimant be physically and mentally able to work *in some capacity*, that claimant is available to work and making and [sic] effort to work, a much lesser standard than that outlined by the worker's compensation statute.

6

17. *Collings is not entitled to a windfall of duplicative benefits and Platinum should be given a credit for all unemployment benefits collected.*

….

19. Collings is entitled to temporary total disability benefits from March 7, 2009 through the date he was again released from work hardening at Maximum Medical Improvement on May 26, 2011 for a total of 116 weeks at his TTD rate of $636 per week. This leads to a total benefit amount of $73,776.00. *After credit for unemployment of $37,050.00* and the $1200.00 Collings collected in earnings, a balance of $35,526.00 is due and owing.

Appellant's App. at 5-6 (emphases added).

Simply put, Collings was unable to perform work of the same kind and character due to the injuries that he suffered while working for Platinum. As a result, he met the statutory requirements to receive TTD benefits. After Dr. Yergler released him to full duty, he attempted to perform construction work but was unsuccessful. At the same time, he was willing, able, and available to work in a capacity that was less physically taxing, as required by the unemployment compensation statute. Because the Board credited Platinum for the sums that Collings had received as unemployment benefits, Collings did not receive a windfall. Thus, his benefits cannot be characterized as duplicative. Under these facts, the Board did not err in concluding that Collings's receipt of unemployment benefits did not preclude him from eligibility for TTD benefits.

Platinum also contends that Collings is not entitled to additional TTD benefits because he waived his right to object to his release to full duty as well as his right to request an IME

7

by failing to dispute the proposed termination of TTD benefits as listed on state form 38911. Form 38911 states in part,

> Employees who disagree with the proposed termination must serve a copy of this disagreement notice to the **Worker's Compensation Board** and **the employer** within **seven (7) days** after receipt of the termination portion of this notice. Please sign below to make an independent medical examination request. An employee may request an independent medical examination to resolve a medical issue dispute.

Ex. B. An employee who disputes the proposed termination or wants to request an IME is instructed to check the appropriate box and mail the form to the Board at the address listed on the form. The concluding section of the form states, "Employer and employee must sign below to certify service or acknowledge receipt of this notice." *Id*. Notably, the space for the employee's signature is blank. *Id*. Collings never signed it.

Collings asserts that he never received the form. The Board examined the unsigned form and specifically found that "Collings did not receive the state form 38911 providing him notice of his right to object to the return to work finding and request an IME at that time." Appellant's App. at 5. Because the form did not contain Collings's signature as required and there is no other evidence indicating that Collings in fact received it, the Board did not err in finding that he never received the form and that he therefore waived neither his right to dispute the proposed termination of TTD benefits nor his right to request an IME.

Platinum also challenges the Board's award of additional TTD benefits on the grounds that during the time covered by the TTD award, Collings attempted to work for two different companies and to start his own business. In other words, Collings was allegedly working construction while claiming that he had a disability that prevented him from working

8

construction. Collings testified that he had attempted to work on construction projects for two different companies and had made approximately $1200 total, but that he was fired from the projects when he could not complete the tasks due to severe pain associated with the work. Ex. D. He also formed his own construction company but was never paid for his projects because he could not complete the work and eventually had to turn the projects over to other contractors. *Id.* In its findings, the Board emphasized that Collings had no job to return to, since Platinum had closed its doors. His TTD benefits had terminated, and he attempted to perform construction work but was physically incapable of doing so. In short, Collings unsuccessfully attempted to perform the same kind and character of work that he had previously performed. In reaching its final damage award on the TTD benefits, the Board subtracted the meager amount that Collings had made from his sporadic work over the two-year period from March 2009 to March 2011. We find no error here.

## II. Permanent Partial Impairment

Platinum also challenges the sufficiency of the Board's findings supporting its order awarding Collings sums for PPI. We disagree. Because the Board is the trier of fact, it has a duty to make findings that reveal its analysis of the evidence and that are specific enough to permit intelligent review. *Smith v. Henry C. Smithers Roofing Co.*, 771 N.E.2d 1164, 1167 (Ind. Ct. App. 2002).[1] The more complex the factual disputes, the greater the specificity that is required, i.e., complex medical issues require particularly detailed findings. *Id.* at 1167-68.

---

[1] In *Smith*, the deficiency in the Board's findings concerned the aggravating effect of the employee's work-related injury on his pre-existing condition. 771 N.E.2d at 1168-69.

9

Here, the Board made the following findings concerning Collings's PPI:

7.  Collings was released from authorized care on November 23, 2009 with a 0% Permanent Partial Impairment rating by Dr. Yergler for his iliac fracture, and a 7% PPI by Dr. Graham for his neck and back injuries.

8.  Collings continued to have ongoing pain and limitation; hence, he sought consult with Dr. Robert Martino, who opined additional treatment was necessary.

8.[sic] In an effort to resolve the dispute as to whether additional treatment was necessary, Platinum requested a Board appointed Independent Medical Examination, which was granted.

9.  Collings' Board appointed IME went forward with Dr. Peter Carney on December 15, 2010 and Dr. Carney filed his report with the Worker's Compensation Board on January 18, 2011 indicating Collings was not at MMI, that a work hardening program was necessary and that Collings has been disabled since the time of the incident, with several restrictions.

10. Platinum supplied work hardening as suggested by Dr. Carney from May 2, 2011 through May 26, 2011.

11. Collings continued to be limited in his daily activities, for which Dr. Gottlieb has supplied an 18% PPI.

….

20. Collings has reached maximum medical improvement. He is entitled to a Permanent Partial Impairment rating of 18% of the whole person as indicated by Dr. Gottlieb.

21. 18% of the whole person impairment has a statutory value of $26,210.00 based on Collings['s] date of injury of January 20, 2009.

Appellant's App. at 5-7.

Essentially, Platinum complains that these findings are inadequate because "there is no mention of the credibility of the several competing medical opinions offered by Platinum

10

Builders and there is no explanation for the [Board's] adoption of the 18% PPI rating over the 0% and 7% PPI ratings." Appellant's Br. at 13. The findings make it clear that Collings continued to have pain and limitation after he received the November 2009 PPI ratings from Platinum's authorized physicians and that his continued impairment resulted in his treatment by IME Carney and eventually Dr. Gottlieb. By the time Dr. Gottlieb assessed Collings at 18% PPI, two years had elapsed. Thus, it was not merely a matter of the Board discrediting one physician in favor of another; rather, the passage of time and Collings's continued impairment were relevant. The 18% PPI rating is supported by Dr. Gottlieb's in-depth report, which specifically states that the rating is based on AMA guidelines. Ex. I. To the extent Platinum now appears to challenge the relative credibility of the physicians, we remind him that we may neither reweigh evidence nor judge witness credibility.

In short, the Board's findings are adequate for review and support its conclusions, and the conclusions support the judgment. Accordingly, we affirm the Board's judgment in all respects.

Affirmed.

ROBB, C.J., and FRIEDLANDER, J., concur.